**PEASTER INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**Patricia GLODFELTY and Keri Dobbs, Appellees.**

No. 2–00–145–CV.

Court of Appeals of Texas, Fort Worth.

May 10, 2001.

Roger D. Hepworth, Henslee, Fowler, Hepworth, & Schwartz, L.L.P., Austin, for Appellant.

Daniel A. Ortiz, Ortiz and Associates, Shane Goetz, Rossetti and Goetz, Arlington, for Appellees.

Panel B: DAY, LIVINGSTON and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

### I. INTRODUCTION

This is a teacher term contract nonrenewal case. The Peaster Independent School District ("Peaster ISD") Board of Trustees voted not to renew the term teaching contracts of Appellees Patricia Glodfelty and Keri Dobbs as high school classroom teachers. The Commissioner of Education affirmed the school board's decision. The teachers appealed the decision of the commissioner to district court. The district court reversed the commissioner's decision and ordered the teachers reinstated. Peaster ISD has appealed the district court's judgment to this court. Because

we hold that the commissioner's decision is unsupported by substantial evidence and based upon erroneous legal conclusions, we affirm the district court's judgment.

## II. FACTUAL BACKGROUND

Appellees Patricia Glodfelty and Keri Dobbs were employed by the Peaster ISD as teachers over a period of years under a series of one-year term contracts. As in previous years, each was employed under a written one-year contract for the 1998–99 school year. On August 28, 1998, two school board members reported to the superintendent that a former student, Jeremy Lowry, had made allegations that he had been involved in consensual sexual relationships with Appellees while he was a high school student. At the time he made these allegations, Lowry was 19 years old and had been out of school for a year.

The following Monday, the superintendent and the high school principal spoke with Lowry, who allegedly gave them "details" of "sexual improprieties" that, according to Lowry, had occurred with Appellees while he was a student. The next morning, the superintendent met with Appellees concerning Lowry's allegations. On September 4, 1998, Appellant placed both Appellees on administrative leave with pay. By separate letters to each Appellee dated January 25, 1999, the president of the school board notified Appellees that the superintendent recommended nonrenewal of their teaching contracts for the 1999–2000 school year. He notified Appellees in identical letters as follows:

> The recommendation not to renew your contract is being made for the following reasons:
>> Any activity, school-connected or otherwise, that, because of publicity given it, or knowledge of it among students, faculty, and community, impairs or di-

minishes the employee's effectiveness in the District.

> The allegations made by Jeremy Lowry have received widespread publicity through the newspapers and have been the subject of much discussion in the community. Regardless of the truth or falsity of the allegations, this widespread publicity impairs and diminishes your effectiveness in the District.

A two-day nonrenewal hearing was held before the school board, which heard testimony from numerous witnesses and argument from counsel for both the school district and Appellees. Following the hearing, the board voted to nonrenew Appellees' contracts. By notices dated April 7, 1999, the board president informed Appellees that their employment would terminate effective at the end of the school year. Appellees appealed the nonrenewal of their term contracts to the Commissioner of Education. *See* TEX. EDUC.CODE ANN. § 21.209 (Vernon 1996). On June 9, 1999, the commissioner issued his decision denying the appeal. Appellees then appealed the commissioner's decision to the 43rd District Court in Parker County. *See* id. § 21.307 (Vernon 1996). Following a bench trial, the district court reversed the commissioner's decision and rendered judgment in favor of Appellees, ordering that Peaster ISD reinstate them with back pay and all other employment benefits retroactive to the date of their nonrenewal. Peaster ISD appeals the district court's decision.

## III. PROCEDURAL BACKGROUND

### A. *Nonrenewal Policies*

Texas teachers with experience may be employed under either continuing contracts or annually renewable term contracts. *Compare* TEX. EDUC.CODE ANN. §§ 21.151–.160 *with* §§ 21.201–.211 (Ver-

non 1996). Most teachers are employed under term contracts. *See Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 418 (Tex.1993). The Term Contract Nonrenewal Act ("TCNA") was enacted in 1981 to provide term contract teachers with basic procedural protections for the first time.[1] *See id.; Cent. Educ. Agency v. George West Indep. Sch. Dist.*, 783 S.W.2d 200, 201–02 (Tex.1989).

The TCNA requires automatic renewal of a teacher's term contract unless the school district complies with certain statutory prerequisites. *See* TEX. EDUC.CODE ANN. §§ 21.201–.213. Under the TCNA, employment policies adopted by the board of trustees of a school district "must include reasons for not renewing a teacher's contract at the end of the school year." *Id.* § 21.203(b). A school district's board must "provide each teacher with a copy of the teacher's contract with the school district and a copy of the board's employment policies." *Id.* § 21.204(d). A teacher must also be provided with notice of the reason for his or her proposed nonrenewal and given an opportunity for a hearing. *Id.* §§ 21.206–.207; *Seifert v. Lingleville Indep. Sch. Dist.*, 692 S.W.2d 461, 463 (Tex. 1985).

### B. Nonrenewal Hearing and Appeal Procedure

When a teacher requests a hearing after receiving notice of proposed nonrenewal, the school board has the choice of two procedures: the board may conduct its own hearing under section 21.207(b) and render its own decision under section 21.208(b), or the board may opt to have an independent hearing examiner conduct an evidentiary hearing and make findings of fact, conclusions of law, and a recommendation to the board on the proposed nonre-

newal. TEX. EDUC.CODE ANN. §§ 21.207(b), .208(b), .257. If the board opts to use a hearing examiner, the hearing must be conducted in the same manner and with all of the procedural protections of a trial without a jury. *Id.* § 21.256. In this instance, the board chose to conduct its own hearing and rendered its own decision.

Under either procedure, a teacher aggrieved by the board's decision may appeal to the Commissioner of Education. *Id.* § 21.209. The commissioner reviews the board's decision, and may not substitute his or her judgment for that of the board "unless the board's decision was arbitrary, capricious, unlawful, or not supported by substantial evidence." *Id.*

Either party may then appeal the commissioner's decision to district court. *Id.* § 21.307. The court reviews the evidentiary record made at the local board level and any evidence taken by the commissioner, but may not take additional evidence. *Id.* § 21.307(e). The court may not reverse the commissioner unless the decision was not supported by substantial evidence or unless the commissioner's conclusions of law were erroneous. *Id.* § 21.307(f).

### C. Substantial Evidence Standard of Review

The decision subject to our review is that of the commissioner. *Id.* § 21.307(a); *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000). A court can reverse the commissioner's decision regarding a teacher's contract if the decision is not supported by substantial evidence or if the commissioner's conclusions of law are erroneous. TEX. EDUC.CODE ANN. § 21.307(f); *Davis*, 34 S.W.3d at 562; *McGilvray v. Moses*, 8 S.W.3d 761, 763 (Tex.App.—Fort Worth

---

[1] Act of May 25, 1981, 67th Leg., R.S., ch. 765, § 2, 1981 Tex. Gen. Laws 2847, 2847 (*amended* 1984, 1987, 1995) (current version at TEX. EDUC.CODE ANN. §§ 21.201–.211).

1999, pet. denied); *Moses v. Fort Worth Indep. Sch. Dist.*, 977 S.W.2d 851, 853 (Tex.App.—Fort Worth 1998, no pet.). Substantial evidence review is a limited standard that gives great deference to an agency in its field of expertise and requires "only more than a mere scintilla," to support an agency's determination. *Davis*, 34 S.W.3d at 566; *R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex.1995). Whether an agency's determination meets that standard is a question of law. *Davis*, 34 S.W.3d at 566.

 "Substantial evidence" means that, upon the evidence as a whole, reasonable minds could have reached the same conclusion that the agency reached. *McKinley Iron Works, Inc. v. Tex. Employment Comm'n*, 917 S.W.2d 468, 470 (Tex.App.—Fort Worth 1996, no pet.) (citing *Tex. State Bd. of Dental Examiners v. Sizemore*, 759 S.W.2d 114, 116 (Tex.1988)). Although "substantial evidence" is a term of art in the area of review of administrative decisions, the standard has been analogized to the "any rational basis" standard in due process analysis where the court ensures that the actions of the school administration were not arbitrary and capricious. *Sanchez v. Huntsville Indep. Sch. Dist.*, 844 S.W.2d 286, 290 (Tex.App.—Houston [1st Dist.] 1992, no writ) (citing *Eiland v. Wolf*, 764 S.W.2d 827 (Tex.App.—Houston [1st Dist.] 1989, writ denied)). "Ordinarily, unless a claim involves the violation of fundamental rights, the court will not interfere with the State's action if it finds a rational basis for the action." *Id.* (quoting *Eiland*, 764 S.W.2d at 834).

### D. Peaster ISD's Nonrenewal Policies

 Local management and control of public schools is a primary and longstand-

ing legislative policy manifested throughout the statutes concerning education. *See Ysleta Indep. Sch. Dist. v. Meno*, 933 S.W.2d 748, 752 (Tex.App.—Austin 1996, writ denied). School districts locally adopt the reasons to decline renewal of teacher's term contracts. *Grounds*, 856 S.W.2d at 418. However, by enacting the TCNA, the legislature constrains school districts by requiring that those reasons be "preestablished," as a part of the school's official policies, providing a "substantive limit" on a school district's decision to nonrenew a teacher's term contract. *Grounds*, 856 S.W.2d at 418; *see* TEX. EDUC.CODE ANN. § 21.203(b).

 The decision of a school district to nonrenew the term contract of a teacher is not entirely discretionary but must be "predicated on one or more of the previously established reasons." *Grounds*, 856 S.W.2d at 418. Stated differently, a teacher cannot be nonrenewed for a reason unlisted in the school district's policy. *Seifert*, 692 S.W.2d at 463. "A decision not predicated on one of the district's preestablished reasons is ineffectual, and the teacher's contract is renewed by operation of law." *Grounds*, 856 S.W.2d at 418; *see* TEX. EDUC.CODE ANN. § 21.204(b).

Appellant Peaster ISD locally adopted Board Policy DFBB, which lists twenty-six separate reasons for nonrenewing a teacher's term contract. Of those listed reasons, the sole reason given to Appellees for their proposed nonrenewal was Reason for Nonrenewal # 16, worded as follows:

> Any activity, school-connected or otherwise, that because of publicity given it, or knowledge of it among students, faculty and community, impairs or diminishes the employee's effectiveness in the District.[2]

---

2. According to the amicus curiae brief of the

Texas Association of School Boards (TASB),

### E. Evidence Presented at Nonrenewal Hearing

Evidence presented at the hearing related only to Lowry's allegations, the Peaster community's knowledge of those allegations, and the community's belief that Appellees had lost their effectiveness as teachers as a result of the publicity about and knowledge of those allegations. There was virtually no evidence presented describing the content of Lowry's allegations. Lowry, himself, did not testify. Superintendent Bledsoe provided the only testimony regarding the content of Lowry's allegations, as follows:

Q. What was the nature of the allegations that were made?

A. Sexual improprieties.

Q. Okay. Did he give details?

A. Yes, he did.

. . . .

Q. Who were the two teachers that he made allegations against?

A. Mrs. Glodfelty and Mrs. Dobbs.

. . . .

Q. Were there more than allegations— allegations of more than one activity?

A. Yes.

Q. With each teacher?

. . . .

A. Yes.

. . . .

Q. Did you consider these serious allegations?

A. Yes, I did.

Q. The allegations that he made, were they of activities that occurred while he was a student?

A. While he was a student, that's correct.

The school district presented testimony to the board purporting to establish the community's knowledge of Lowry's allegations and the teachers' diminished effectiveness as a result of that knowledge. Superintendent Bledsoe testified that knowledge of Lowry's allegations was widespread in the community and that the knowledge diminished the teachers' effectiveness. In his opinion, once such allegations become widespread in the community, a teacher's effectiveness is diminished if the teacher returns to school. He testified that an employee's effectiveness would be diminished in the district because of publicity and knowledge of the allegations in the community, among students, and among the faculty. Superintendent Bledsoe acknowledged that he had personally known both Appellees for seven to nine years and that both were excellent, outstanding teachers and admitted he did not know whether the allegations made by Lowry were true or false.

The school district presented other testimony from superintendents of neighboring school districts, as well as testimony from numerous residents of the community. LaVoyd Williams, a retired resident of the Peaster community, became aware of Lowry's allegations when students at the high school began to talk about them, and heard more when the allegations were discussed in newspaper articles and on television. He described the allegations as common knowledge. He believed that, if Appellees returned to their teaching positions, they would face harassment, they would impose a disturbing influence upon the students,

records indicate that at least 1,019 of the 1,047 Texas school districts have adopted local policies that include language identical to or very similar to the reasons for nonrenewal at issue in the present case. TASB specifically asserts that the language in Reason for Nonrenewal # 16 has been in continuous use in Texas since the adoption of the Term Contract Nonrenewal Act in 1981.

and their presence would disrupt the educational process. He believed that if the board and the superintendent supported the teachers, there would be a new board at the next election and the superintendent would be asked for his resignation. Williams did not know that the teachers had denied Lowry's allegations.

Janie Hendrick, a former teacher, testified that the teachers' effectiveness and ability to serve as role models had been diminished as a result of the widespread knowledge of the allegations in the Peaster community. She was opposed to Appellees' reinstatement and, in her opinion, other teachers shared her concerns. Terry Grisso, a teacher who had substituted for Ms. Dobbs after her suspension, testified that the students were aware of the allegations, and she believed they had lost respect for Ms. Dobbs. In her opinion, reinstatement of Appellees would be a problem because of this lack of respect. JoAnne Williams, another resident of the community, testified that she believed the rumors were widespread and the teachers' effectiveness would be diminished. She did not believe the students "would allow" the administration and board to bring them back. Ken Williams, a retired teacher, a parent, and the spouse of another teacher in the Peaster school district, testified that he had not heard the rumors, but he knew that the school is a "rumor mill."

The school district established that area newspapers carried articles about the allegations in September and October of 1998. The allegations were also reported to Child Protective Services and the district attorney. The district attorney issued a press release stating that he was not going to pursue further charges because the alleged consensual acts with one teacher occurred when Lowry was seventeen, the age of consent under Texas law, and for the alleged sexual acts with the teacher

when he was sixteen years old, the student said he did not want criminal charges to be brought, only that the school "consider" the allegations.

Appellees, through their attorneys, denied the allegations but did not testify. They countered the school district's evidence on the issues of the publicity and its asserted effect in diminishing their effectiveness with testimony from various current and former students, parents, and teachers who attested to their outstanding work and good reputations and that the allegations were no longer circulating or widespread and would not impair Appellees' effectiveness.

## F. Commissioner's Findings of Fact and Conclusions of Law

The commissioner issued the following pertinent findings of fact as supported by substantial evidence in the evidence presented to the board:

3. The allegations made by Jeremy L. were that while he was a student the Petitioners participated in romantic relationships with him.

4. On September 9, 1999, the *Fort Worth Star Telegram* reported that two Peaster Independent School District teachers were placed on administrative leave pending the outcome of a sexual harassment investigation.

5. On September 11, 1998, the *Weatherford Democrat* published a front-page story that reported that Respondent had suspended Petitioners due to Jeremy L.'s accusations that they had engaged in inappropriate romantic relationships.

6. On October 9, 1998, the *Weatherford Democrat* published a story entitled, "D.A. drops Peaster teacher investigation." The story indicated the District Attorney would not prose-

cute Petitioners because Jeremy L. did not want a criminal investigation and that the alleged events occurred after he turned 17. It also stated that the teachers' attorney claimed the teachers had passed polygraph tests.

7. On October 10, 1998, the *Fort Worth Star Telegram* published a story that criminal charges will not be filed against two Peaster High School teachers. The story noted that the student was 17, the age of consent in Texas, when the alleged acts occurred and that the teachers' lawyer stated that they had passed a polygraph test.

8. October 13, 1998, the *Weatherford Democrat*, in a front-page story, reported that Respondent was continuing to investigate the allegations that Petitioners had sexually harassed a student.

9. Petitioners' relationships with Jeremy L. were widely discussed in the community.

10. Because of the publicity given to Petitioners' relationships with Jeremy L., Petitioners' effectiveness as teachers was significantly impaired.

11. A male teacher, who in a previous year had admitted to having a romantic relationship with a student, was not noticed for proposed nonrenewal, but he did resign.

Following these findings, the commissioner's decision discussed the school board's policy Reason for Nonrenewal #16. Although he found substantial evidence of an "activity" that was clearly inappropriate, *i.e.*, romantic relationships between teacher and student, he stated that, in his opinion, the school district was not required to present evidence of "inappropriate activity" by the teachers. He concluded that "the activity itself need not be inappropriate." The focus is on how school and community reaction can diminish a teacher's effectiveness. The commissioner's decision explicitly stated that:

> One need not prove that a teacher has engaged in an inappropriate activity in order to nonrenew a teacher's contract.
>
> One may object that a teacher may do nothing wrong and have no defense to a nonrenewal. This objection ignores the fact that a teacher can always defend himself by proving his innocence to the community and school. A teacher's effectiveness will not be found to have been diminished if the community and school do not believe the allegations. In fact, a nonrenewal hearing gives a teacher a very public forum to argue that he did nothing wrong. A formal decision by a school district that a teacher had done nothing wrong would go a long way toward showing that the teacher's effectiveness will not be reduced.

As a final matter, the commissioner's pertinent conclusions of law included the following:

> 2. Because Petitioners violated Respondent's policy DFBB(LOCAL) (Reason for Nonrenewal #16), there is substantial evidence to support the nonrenewal of Petitioners' contracts.
>
> . . . .
>
> 6. A district may nonrenew a teacher who violates DFBB(LOCAL) (Reason for Nonrenewal #16) even if the teacher's activity in itself is not objectionable.

## G. Proceedings in the 43rd District Court

In district court, Appellees Glodfelty and Dobbs alleged that the commissioner's decision to nonrenew their term contracts was not supported by substantial evidence in the administrative record. Specifically,

Appellees alleged there was no evidence of any "activity" by or involving Appellees within the meaning of Reason for Nonrenewal #16. They further alleged there was no evidence of any "knowledge" of any such activity among students, faculty, and community within the District, that impaired or diminished Appellees' effectiveness as teachers in the District.

After considering the administrative record, briefs, and argument of counsel, the district court reversed the commissioner's decision, finding that it was not supported by substantial evidence and contained erroneous conclusions of law. The district court's judgment ordered that Appellees be reinstated in the same professional capacity as they were previously employed and that Peaster ISD pay Appellees back pay and all other employment benefits retroactive to the date of their nonrenewal.

## IV. ANALYSIS

We agree with Appellees that the trial court correctly reversed the commissioner's decision because there was no evidence to support his decision, and his decision was based on erroneous legal conclusions.

### A. No Evidence of "Activity" by Appellees

■ Peaster ISD's only argument in its original brief is that the administrative record contains substantial evidence of "activity" by the teachers within the meaning of Reason for Nonrenewal #16. We disagree. To the contrary, we find no evidence of any "activity" by Appellees in the record from the nonrenewal hearing. As previously noted, the school district presented substantial evidence of knowledge in the community of Lowry's allegations, widespread publicity of those allegations, and the harmful effect of those allegations on the public's perception of Appellees's effectiveness as teachers and role models. This evidence did not establish "activity" by Appellees—it established *allegations* of activity, publicity and knowledge of those *allegations* in the community, and diminished effectiveness of the teachers because of the *allegations*.

■ The school district contends that superintendent Bledsoe's testimony regarding Lowry's allegations and the widespread publicity of those allegations in the community constitute substantial evidence of activity by Appellees. More specifically, the school district argues that, although Bledsoe's testimony and the evidence of publicity of the allegations was admittedly hearsay, the evidence was unobjected to and, therefore, has probative value as substantial evidence of actual activity by the teachers, supporting nonrenewal. We again disagree.

Rule 801(d) of the Texas Rules of Evidence defines "hearsay" as a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. TEX.R. EVID. 801(d). Throughout the entire nonrenewal hearing, the school district's attorney made it clear that he was not offering evidence to prove the truth of Lowry's allegations that Appellees engaged in inappropriate sexual activity.

In his opening statement, Appellant's attorney began by stating: "What we're not here to prove is whether or not the allegations are true.... The testimony tonight will be about the widespread publicity, not about the truth or falsity.... [W]e're not going to try to prove who's right and who's wrong." Furthermore, during his questioning of all witnesses, the district's attorney repeatedly emphasized that the truth or falsity of the allegations was not an issue at the hearing and that the only issue for the board's determination was the diminished ability of Appel-

lees to remain employed as teachers resulting from Lowry's allegations and the widespread publicity of those allegations. In his closing argument, he again emphasized: "[W]e have not put on evidence of whether the allegations are true or false and we're not gonna say they're true or they're false.... You're not here to decide if these allegations are true or false."

It is clear that neither Bledsoe's testimony nor the newspaper articles were offered as evidence of the truth of Lowry's allegations. It was not incumbent upon Appellees to make "hearsay" objections when the evidence in question was not offered as evidence of the truth of the allegations.

Moreover, evidence specifically offered only for a limited purpose remains subject to its limited purpose; consequently, such evidence is simply not probative evidence of any other fact. *Davis v. Gale*, 160 Tex. 309, 330 S.W.2d 610, 612–13 (1960); *Cook Drilling Co. v. Gulf Oil Corp.*, 139 Tex. 80, 161 S.W.2d 1035, 1036 (1942); *see also Tex. Commerce Bank v. Lebco Constructors, Inc.*, 865 S.W.2d 68, 76 (Tex.App.—Corpus Christi 1993, writ denied) (evidence admitted for particular purpose may not be weighed in determining sufficiency of evidence to show matter outside limitation); *Fitzgerald v. LaFreniere*, 658 S.W.2d 692, 696 (Tex.App.—Corpus Christi 1983) (holding document offered for limited purpose of showing it had been given to party and never re-offered remained subject to limited tender and was no evidence of other fact sought to be proved), *rev'd on other grounds*, 669 S.W.2d 117 (Tex.1984).

The preestablished reason for nonrenewal given to Appellees was that of engaging in an "activity," not allegations of an activity. The school district had the burden of proof to establish the existence of the preestablished reason given for the proposed nonrenewal. *See Stratton v. Austin Indep. Sch. Dist.*, 8 S.W.3d 26, 30 (Tex.App.—Austin 1999, no pet.). To permit nonrenewal based on proof of mere allegations of activity, when the preestablished reason for nonrenewal requires "activity," would allow nonrenewal for a reason other than the preestablished reasons listed in the school board's policy.

Nonrenewal for an unlisted reason is impermissible. The supreme court condemned an attempted nonrenewal of a teacher's term contract under similar circumstances in *Seifert*, without even reaching the question of whether there was substantial evidence to support the reason given for nonrenewal. 692 S.W.2d at 463 (holding teacher's contract could not be nonrenewed for "community feeling of incompetence" as stated in notice letter when school district's preestablished policy required actual incompetence). Even the school district admits that "[w]hat is required is to show a violation of preestablished reasons for nonrenewal."

Appellees maintain that the school district produced no evidence of any "activity" of the teachers as stated in the reason for their proposed nonrenewal, but only of allegations, rumors, and gossip, which cannot suffice as evidence to support nonrenewal. We agree. There was no evidence that Appellees actually engaged in the activity of sexual improprieties with Lowry as alleged. We hold that the school district presented no evidence of "activity" as required by Reason for Nonrenewal # 16.

The commissioner found substantial evidence of "activity" of the teachers, *i.e.*, participation in "romantic relationships" with Lowry. The commissioner's critical findings are that "Petitioners' relationships with Jeremy L." were widely discussed in the community and that, because of the publicity given those "relationships," their

effectiveness as teachers was significantly diminished.

The commissioner made clear his own opinion that the "activity" in question within the meaning of Reason for Nonrenewal # 16 was "a relationship with a student." He concluded that Appellees "violated" the policy in question by engaging in this "activity," regardless of whether the relationship was inappropriate. However, there was likewise no evidence that Appellees engaged in any "relationship" with Lowry, appropriate or inappropriate.

The school district makes no attempt to justify the commissioner's conclusion that an "activity" as that term is used in Reason for Nonrenewal # 16 need not be inappropriate. Resisting the temptation to ask exactly how an activity can "violate" a school policy if it is not inappropriate, we believe that it is unnecessary to address whether the commissioner's conclusion was correct because we hold that there was no substantial evidence to support the commissioner's findings of fact that Appellees engaged in any "activity," appropriate or inappropriate, within the meaning of Reason for Nonrenewal # 16.

## B. Erroneous Legal Conclusions of Commissioner

### 1. Proposed interpretations by the commissioner and the school district

■ By its reply brief in this court, the school district offers alternative arguments to support the commissioner's decision. First, the school district proposes that an "activity" need not be an activity "by the teachers" to serve as a basis for nonrenewal but may be activity by others, including: the making of the allegations by Jeremy Lowry, the discussions up and down the halls at the school by the students and faculty, the publication of the allegations by the newspapers, the passing of the arti-

cles around the stands at athletic events, and the criminal investigation.

Second, the school district suggests that no "activity" is even required under the board policy. Because the focus of the policy is on the reduced effectiveness of the teacher resulting from publicity and knowledge of the activity in the community, proof of diminished effectiveness was all that was necessary, the district contends, for whatever reason and regardless of "whether or not the allegations are true."

We reject these proposed interpretations of Reason for Renewal # 16: (1) that the "activity" element of Reason for Nonrenewal # 16 can be satisfied by activity of persons other than the teacher; or (2) that Reason for Nonrenewal # 16 requires no evidence of any "activity" at all. Based on the context of Reason for Nonrenewal # 16, an analysis of relevant decisions by the commissioner, and fairness, we believe that Reason for Nonrenewal # 16 required substantial evidence of inappropriate "activity" by Appellees.

### 2. Context of Reason for Nonrenewal # 16

We note that the board policy adopted by Appellant listed twenty-six separate, preestablished reasons for a proposed nonrenewal of an employee's term contract. Reason for Nonrenewal # 16 was included among these twenty-six reasons. With the one exception of Reason # 8, which references financial constraints on the district, all of the remaining twenty-five reasons for nonrenewal listed in the board policy are based on the teacher's own conduct, omissions, failures, or deficiencies. Those reasons for nonrenewal include failure to fulfill duties and responsibilities, incompetency, inability to maintain discipline in the classroom, conducting personal business during school hours when it results in neglect of duties, drug or alcohol abuse, con-

viction of a felony or any crime involving moral turpitude, assaulting another employee or student, and falsification of records. Accordingly, it would seem entirely consistent that the "activity" element of Reason for Nonrenewal #16 should be based on conduct of the employee—not others.

### 3. Relevant Commissioner's Decisions

In support of the interpretation that the activity need not be that of the teacher, the school district cites to the commissioner's previous decision in *Kirby v. College Station Independent School District*, Docket No. 109–R1–598 (Comm'r Educ. 1998) (located at *www.tea.state.tx.us./commissioner/logg.html*), in which a teacher's term contract was nonrenewed based on the same nonrenewal policy as in the present case. The *Kirby* petitioner was accused of being sexually involved with a minor student and was then arrested for sexual assault of a minor. Local print, radio, and television media gave the story prominent coverage. In his decision upholding the board's decision to nonrenew the petitioner's teaching contract, the commissioner in *Kirby* expressly found that "because of the publicity given to the story concerning Petitioner's arrest, Petitioner [can] no longer be an effective teacher." The commissioner in *Kirby* stated as follows:

It may be objected that unless it is determined that Petitioner did in fact assault the student that this result is improper, that only a deliberate personal failing can support a nonrenewal. However, this is not the law. A teacher who through no fault of his own is involved in a serious accident that prevents him from teaching may be nonrenewed. In fact, a district does not need to show good cause to nonrenew a teacher. What is required is the violation of a preestablished reason for nonrenewal.

The primary reason why we have teachers is to educate students. When a teacher cannot properly educate students, nonrenewal is appropriate.

*Kirby,* op. at *4. (citation omitted).

This passage from *Kirby* is cited by the school district for its theory that the "activity" element may be satisfied by activity of others. Specifically, the school district contends that the teacher's arrest in *Kirby* was an "activity" by someone other than the teacher that supported nonrenewal under a board nonrenewal policy identical to the one at issue in the present case. We find *Kirby* unpersuasive.

The teacher raised two issues before the commissioner in *Kirby*. Neither of those issues is pertinent here. The first issue presented by the teacher in *Kirby* was a complaint only regarding a lack of substantial evidence that her effectiveness was reduced. Significantly, she did *not* complain of a lack of substantial evidence that she actually engaged in the "activity" made the basis of the nonrenewal, *i.e.*, the alleged sexual assault for which she was arrested. Therefore, whether an activity by someone other than the teacher may be an "activity" within the meaning of Reason for Nonrenewal #16 was not at issue in *Kirby*. In fact, the language from *Kirby*, which is quoted in the commissioner's decision in this case and relied upon by the school district, dealt with an entirely different issue—that of constitutionality of the school district's policy.

In deciding the second issue presented in *Kirby*, namely the constitutionality of the district's policy, the commissioner determined that a board policy "which allows nonrenewal when publicity given to a *teacher's actions* impairs a teacher's effectiveness," was not unconstitutional on its face or as applied to the petitioner. (emphasis added). By referring to a "teacher's actions," the commissioner's legal con-

clusion clearly refers to activity by the teacher, and no one else. This statement confirms that the occurrence of the alleged "activity" by the petitioner in *Kirby*, as contrasted with this case, was not contested.

Additionally, the commissioner in *Kirby* referred to the publicity about "the relationship [the teacher] had with one of her students," again apparently accepting an uncontested fact. Because the "activity" element of the board policy was uncontested in *Kirby*, the decision is clearly not on point. Alternatively, to the extent that the commissioner may have improperly presumed the existence of "activity" in *Kirby*, as he did in this case, we decline to accept *Kirby* as persuasive.

Moreover, from these statements in *Kirby*, as well as from his similar statements regarding the "teacher's activity" in this case, it is clear that the commissioner, contrary to the school district's arguments, does believe that, under the policy reason for nonrenewal in question, some actual "activity" is required and, further, that the term "activity" refers to conduct of *the teacher*, not someone else.

We likewise decline to accept the school district's alternative argument that conduct of others than the teacher, herself, is sufficient to satisfy the element of "activity." Under this analysis, Lowry's making of the allegations and the newspaper's printing of the story of Lowry's allegations could be the "activity" which resulted in publicity or knowledge of Lowry's allegations. This is nonsensical, and would require writing the term "activity" entirely out of Reason for Nonrenewal # 16.

Furthermore, the school district's position is at odds with the commissioner's prior decision in *Dunlap v. Brackenridge Independent School District*, Docket No. 334–R1–692 (Comm'r Educ.1995) (located at *www.tea.state.tx.us./commission-er/logg.html*), in which he had held that "allegations, standing alone, cannot support [a teacher's] nonrenewal." In *Dunlap*, the proposed ground for nonrenewal at issue was "[f]ailure to maintain effective working relationships with parents." After examining and rejecting evidence of random allegations and testimony of parents regarding complaints not based on personal experiences with the teacher, the commissioner noted that nothing more had been established than a "perception of ineffectiveness," which was insufficient to support nonrenewal on the proposed ground.

Significantly, in *Dunlap*, the commissioner explicitly recognized the gravity of a decision to nonrenew a teacher's term contract and the importance that such a decision to nonrenew be substantiated, in stating:

> [It] must be remembered that nonrenewal of a contract of employment is tantamount to a termination or a firing in the private sector and as such, has been described in the annals of labor law as the "capital punishment" of the employment world. *Therefore, any such decision, because of the taint attendant thereto, must be based on actual behavior of the employee, not upon innuendo and rumor. No man's livelihood should be taken away unless such action is warranted based upon fact, not fiction.*

(emphasis added).

We find the commissioner's analysis in *Dunlap* under similar facts to this case to be highly persuasive. We decline to accept the school district's argument that allegations or publicity suffices as an "activity," nor do we accept the commissioner's current interpretation of Reason for Nonrenewal # 16 as not requiring evi-

dence of inappropriate activity by the teacher.[3]

We also decline to accept the school district's further alternative argument that no evidence of "activity" is needed at all because the focus of the reason for nonrenewal is diminished effectiveness as a teacher. Under this interpretation, the term "activity" is again entirely written out of Reason for Nonrenewal #16. If a school district wants to institute such a policy, it should rewrite this reason for nonrenewal and take out the language relating to "activity." Under Reason for Nonrenewal #16, "activity" at this time remains the foundation upon which the remaining elements rely in their entirety. Under any reasonable reading of the plain language of Reason for Nonrenewal #16, a teacher's diminished effectiveness *must* be the result of publicity created by an "activity" by the teachers, themselves.

### 4. Fairness

Finally, fairness dictates against holding teachers' term employment contracts at the mercy of nothing more than allegation. We believe such a holding would create dangerous precedent which would leave teachers particularly vulnerable to fabricated accusations by disgruntled students or parents. Peaster ISD's own superintendent conceded it is unfair for a teacher's career to be jeopardized by rumors alone. The superintendent of the Brock School District, testifying as an expert witness for the school district, acknowledged teachers are especially vulnerable to false allegations of improper conduct, and that a policy allowing nonrenewal of a teacher based on false allegations encourages students to make such allegations. The su-

perintendent of the Mineral Wells Independent School District, also an expert witness for the district, agreed that, under the district's theory that publicity generated by allegations is sufficient for nonrenewal, a teacher is just one false accusation away from losing his or her career.

Most disturbing is the suggestion by the commissioner that the remedy for the targeted teacher is to prove that he or she is innocent to avoid nonrenewal. The decision of the commissioner states in that regard:

> One may object that a teacher may do nothing wrong and have no defense to a nonrenewal. This objection ignores the fact that *a teacher can always defend himself by proving his innocence to the community and school.* A teacher's effectiveness will not be found to have been diminished if the community and school do not believe the allegations.

This rationale ignores the fundamental principle that the school district, and not the teacher, has the burden of proof at a nonrenewal hearing. If the board votes to nonrenew, it is the district which must demonstrate that the decision is supported by substantial evidence. Moreover, under the theory upon which the school district here sought to nonrenew these teachers' contracts, it was announced at the outset that it was immaterial whether the allegations were true or false. The only issue, according to the school district, was whether the teachers' effectiveness had been diminished by the allegations. Under this theory, it would be futile for a teacher to try to prove his or her innocence. The teacher loses either way.

---

3. We fail to see how activity that is not inappropriate can result in "violation" of a school board's policy. Using the commissioner's own example, a serious accident may result in injuries incapacitating the teacher from work-

ing, but unless the teacher was drunk or reckless, nonrenewal as a result of the accident would be covered by separate policies and separate laws.

We hold that the commissioner's conclusion of law that "[a] district may nonrenew a teacher who violates [Reason for Nonrenewal # 16] even if the teacher's activity in itself is not objectionable" is erroneous to the extent that it permits the "activity" element of Reason for Nonrenewal # 16 to be satisfied by presenting substantial evidence of nothing more than allegations, activity which is not inappropriate, activity of others, or diminished effectiveness. We further hold that the commissioner's decision is erroneous to the extent that it implies a legal conclusion that the teacher has the burden to prove his or her innocence of an alleged activity under Reason for Nonrenewal # 16.

### V. CONCLUSION

The only issue, according to Appellant Peaster ISD, was whether Appellees' effectiveness as teachers had been diminished by widespread gossip and rumors in the small community of Peaster, Texas, triggered by unproven allegations of sexual misconduct made by a former student. We are convinced by the very able and informative briefs furnished by the *amicus curiae* as well as the parties, that it should not and cannot be a part of the jurisprudence of this State that a term contract teacher may lawfully be nonrenewed based on unsubstantiated allegations. Such a precedent would disserve the public interest by discouraging new teachers and preventing our schools from attracting and keeping experienced teachers at a time when there is a critical shortage of those professionals needed to educate our children. Having overruled Appellant's issues, we affirm the trial court's judgment.