**Jim NELSON, Commissioner of Education for the State of Texas and Fort Worth Independent School District, Appellant,**

v.

**Ann WEATHERWAX, Appellee.**

No. 2–00–287–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 11, 2001.

John Cornyn, Atty. Gen., Andy Taylor, First Asst. Atty. Gen., Jeffrey S. Boyd, Deputy Atty. Gen. for Litigation, Don Walker, Chief, Administrative Law Division, George Warner, Asst. Atty. Gen., Austin, for Appellant Commissioner of Education.

Chappell, Parmelle, Johnson & Hill, P.C., Robert S. Johnson, Rita Rodriguez Utt, Fort Worth, for Fort Worth Independent School Dist.

Ortiz and Associates, Daniel A. Ortiz, Rossetti and Goetz, Shane Goetz, Arlington, for Appellee.

Panel A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

This is an administrative appeal from the decision of the Commissioner of Education ("commissioner") upholding the Fort Worth Independent School District's ("FWISD") termination of its contract with special education teacher Ann Weatherwax ("Weatherwax"). The district court reversed the decision of the commissioner. On appeal, the commissioner and FWISD contend that the district court erred because education code section 21.409[1] did not prevent the school district from conducting proceedings, while Weatherwax was on a temporary disability leave of

absence, concerning termination of her contract for good cause unrelated to her disability and because the commissioner's decision is supported by substantial evidence. We will reverse the district court's judgment and render judgment affirming the commissioner's decision.

### II. FACTS

In February 1998, at the end of the school day, Weatherwax allowed one of her wheelchair-bound students, Robert, to leave her classroom through an unsafe, stepped exit. Robert fell from his wheelchair as he tried to maneuver down the exit's step, and he was injured. That morning the school principal, Mr. Brasfield, had directed Weatherwax not to permit her wheelchair-bound students to use the stepped exit from her room and told her that all wheelchair-bound students were to use the ramped exit from the school. Following Robert's injury, the school suspended Weatherwax with pay and began an investigation.

On April 21, 1998, the school administration notified Weatherwax it would recommend her termination to the school board. Also on April 21, 1998, Weatherwax made a written request for a temporary disability leave of absence, which FWISD granted on May 4, 1998. On May 13, 1998, the FWISD Board of Education President notified Weatherwax that the school board proposed to terminate her contract with FWISD based on the February incident. Weatherwax requested a hearing. The commissioner assigned a hearing examiner, and a four-day hearing was held. On December 3, 1998, the hearing examiner issued findings and conclusions and recommended that Weatherwax be terminated for good cause.

---

1. All statutory references herein are to the Texas Education Code unless specifically indicated otherwise.

The FWISD Board of Education adopted the examiner's findings, conclusions, and recommendations, except that the Board made the termination of Weatherwax's contract effective only upon her return from her temporary disability leave of absence. Weatherwax appealed the Board's decision, and the commissioner upheld it. Weatherwax then appealed to district court. The district court reversed the commissioner's decision and entered a judgment for Weatherwax, ordering that she be reinstated and paid back pay. The commissioner and FWISD now appeal the district court's judgment to this court.

### III. STANDARD OF REVIEW

The decision subject to our review is that of the commissioner. TEX. EDUC.CODE ANN. § 21.307(a) (Vernon 1996); *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex.2000); *Peaster Indep. Sch. Dist. v. Glodfelty*, 63 S.W.3d 1, ——, slip op. at 6, (Tex.App.—Fort Worth 2001, no pet.). A court may not reverse the commissioner's decision regarding a teacher's contract unless: (1) the decision is not supported by substantial evidence; or (2) the commissioner's conclusions of law are erroneous. TEX. EDUC.CODE ANN. § 21.307(f); *Davis*, 34 S.W.3d at 562; *Glodfelty*, 2–00–145–CV, slip op. at 6, 2001 WL 498539, at *3. In this case, the commissioner and FWISD claim that the commissioner's decision was supported by substantial evidence and that the commissioner's conclusions of law were correct.

■ In determining whether the commissioner's decision is supported by substantial evidence, the test we apply is to ascertain whether, based upon the evidence as a whole, reasonable minds could have reached the same conclusion as the commissioner. *See Glodfelty*, at ——, No. 2–00–145–CV, slip op. at 7, 2001 WL 498539, at *3. If, based on the evidence as a whole, reasonable minds could have reached the same conclusion as the commissioner, then the commissioner's decision is supported by substantial evidence. *See id.* The substantial evidence standard of review is limited, intentionally giving great deference to the particular agency in its field of expertise and requiring "only more than a mere scintilla," to support an agency's determination. *Davis*, 34 S.W.3d at 566; *Glodfelty*, at ——, No. 2–00–145–CV, slip op. at 7, 2001 WL 498539, at *3. Whether substantial evidence exists to support the commissioner's decision is a question of law. *Davis*, 34 S.W.3d at 566; *Glodfelty*, at ——, No. 2–00–145–CV, slip op. at 7, 2001 WL 498539, at *3.

■ We review the commissioner's legal conclusions to determine if they are erroneous. TEX. EDUC.CODE ANN. § 21.303(b)(2). The commissioner's reasoning for his decision is immaterial if his conclusion is correct. *Miller v. Houston Indep. Sch. Dist.*, 51 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2001, pet. filed). Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute. *Id.* (citing *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex.1994)); *Moses v. Fort Worth Indep. Sch. Dist.*, 977 S.W.2d 851, 853 (Tex.App.—Fort Worth 1998, no pet.).

### IV. EVIDENCE PRESENTED AT THE TERMINATION HEARING

The termination hearing lasted four days. The evidence focused on two issues: (1) FWISD's contention that Weatherwax was insubordinate by failing to follow official directives, specifically written directives dated February 10, 1998, and February 24, 1998, from Principal Brasfield;

and (2) FWISD's contention that Weatherwax was negligent and violated the FWISD's standards of professional conduct by permitting Robert to use the unsafe, stepped exit instead of the ramped exit.

FWISD called as witnesses: Mr. Brasfield, the school principal; Bruce Wycoff, administrator for employee regulations and enforcement in the FWISD's Human Resources Department; a student who observed the incident from the waiting school bus; Annette Bailey, the injured student's mother; Robert, the injured student; Elva Giles, Weatherwax's assistant at school; Dedra Diggs, the school's campus monitor; Parella Polk, the school bus attendant; Mitzi Davis, the school bus driver; and Mirta Sonnen, a special education supervisor/diagnostician with FWISD. Weatherwax testified on her own behalf and called Reggie Ellis, another FWISD special education teacher, and Mary Hepp, an employee of the Texas State Teacher's Association assigned to Fort Worth, to testify.

The testimony and evidence presented established that Weatherwax taught a self-contained LINC class for severely handicapped students who had difficulty caring for themselves. Approximately five students were in Weatherwax's class. Weatherwax routinely allowed her students to leave school via the stepped exit because this exit led directly from her classroom to the front of the school where the bus picked up her students. Principal Brasfield informed Weatherwax on the morning of the accident, in a meeting between himself; Weatherwax; Mary Hepp, an employee of the Texas State Teacher's Association assigned to Fort Worth; and Daniel Licea, Vice Principal, that "all people in wheelchairs need to use that ramp on the—on that opposite end of the building." Principal Brasfield testified that Weatherwax's responsibility for her five special education students did not end until they were safely aboard the school bus. Mirta Sonnen offered her opinion as an expert in special education teaching and ethics standards that it would never be a safe practice to allow a ten-year-old, handicapped, wheelchair-bound student to maneuver himself down the stepped exit in question.

Three witnesses, Robert; the student on the school bus watching the incident; and Parella Polk, the school bus attendant who saw the accident, all testified that Robert exited the unsafe, stepped exit from Weatherwax's room by himself, that Weatherwax was not present or assisting him, and that while he was attempting to maneuver his wheelchair down the step, he tipped from it and fell to the ground. Robert fractured his kneecap. Polk rushed over to assist Robert back into his wheelchair. Diggs, the campus monitor, testified that she saw Robert on the ground and saw Polk assisting him back into his wheelchair. She looked around for Weatherwax but did not see her. Diggs said she later saw Weatherwax in the building near the copy room. Giles, Weatherwax's assistant, said Weatherwax left the room to use the phone and was not present when Robert fell. Davis, the bus driver, said the child waiting on the bus told her Robert had fallen and that, when she looked over at Robert, Weatherwax was not in front of the school.

In a meeting the next day, however, Weatherwax told Principal Brasfield that she was with Robert when he fell. Weatherwax also wrote and signed a document titled, "2–25–98 Personal Notes" stating that she was in front of the step by the stepped exit facing away from the door when Robert came wheeling past her and said that he had fallen. At the hearing, Weatherwax testified that she had returned to her classroom before Robert left

it and that she was outside the school, facing the other way, when Robert fell. She said that Robert had never used the stepped exit on his own before. Later, she testified that Robert was competent in maneuvering his wheelchair down the exit's step by himself and that she stood by and "monitored" him by watching him. Weatherwax agreed that Principal Brasfield had instructed her the morning of the accident that all wheelchair-bound students were to use the school's ramped exit and that it was her responsibility to ensure that her five students got safely on the school bus.

Hepp testified that she recalled a meeting on February 25th including Principal Brasfield and Weatherwax and remembered that the ramped-exit had been discussed, but could not recall the details of the discussion. Nelson testified that she was a teacher at Weatherwax's school, that Weatherwax took good care of her students, and that she did not believe it was improper for Weatherwax to permit her students to use the stepped exit.

## V. The Hearing Examiner's Findings, Conclusions and Recommendations

Following the hearing, on December 3, 1998, the independent hearing examiner issued his written findings, conclusions and recommendations. The examiner's findings include the following:

3a. Respondent's testimony and written explanations of her conduct on 2–24–1998 are hopelessly and materially inconsistent. As a result, none of the trial witnesses (Respondent included) have testified in a consistent way so as to exculpate Respondent of serious neglect of duty. In other words, even Respondent herself has not consistently provided herself with a credible explanation that would exculpate her from serious blame.

3b. The witnesses who have provided consistent testimony—about what happened to Robert, and about why Respondent was not present when Robert was hurt on 2–24–1998,—and why Respondent had no excuse for allowing Robert to exit the north door on the afternoon of 2–24–1998,—have provide [sic] credible testimony the aggregate of which paints a picture of Respondent temporarily and carelessly abandoning the few students she was charged to care for, with the foreseeable result being that one of them, (Robert) was seriously injured, in a manner that could have exposed him to even worse injury than what he actually suffered.

. . . .

6b. In other words, Principal Brasfield was Respondent's direct supervisor and he properly issued lawful directives to her, including the directive he explained to her on the morning of 2–24–1998, namely, that she was to prevent her students from using the north door to exit classroom # 100, because the north door was a safety risk.

. . . .

15a. I find that Mr. Brasfield clearly communicated to Respondent that the north door was not to be used by any wheel chaired student. I further find, based on credible testimony of Robert's mother, that Respondent's facilitation of the north door being used on 2–24–1998 was an instance of wrongdoing that she knew she was at fault for[.]

The hearing examiner made the following conclusions of law:

F. FWISD has not only carried its (preponderance of the credible evidence) proof burden, per Tex. Educ.Code § 21. 256(h), FWISD has proven virtually all of the above-listed facts by a higher level of evidentiary weight, e.g., clear-and-convincing and overwhelming

weight-of-the-credible evidence standards.

. . . .

H. Respondent has violated DOAD (Local) by being insubordinate and by failing to comply with official directives.[2]

I. Respondent has violated DOAD (Local) by failing to meet FWISD's standards of professional conduct.

J. Respondent has violated DH(E) / Principle IV Ethical Conduct toward Students by failing to make reasonable efforts to protect Robert B. (an elementary school student) from conditions detrimental to physical health and safety.

## VI. THE COMMISSIONER'S DECISION

On Weatherwax's appeal of the independent hearing examiner's decision, the commissioner determined that the following were supported by substantial evidence:

1. [FWISD] on December 8, 1998, voted to terminate Petitioner's, Ann Weatherwax's, continuing contract effective when she is no longer on temporary disability leave.

2. The Petition for Review was filed on December 28, 1998.

3. The findings of fact in the certified hearing examiner's Recommendation, which were adopted by a vote of Respondent, are adopted as if set out in full.

The commissioner's decision addressed Weatherwax's contention that Texas Education Code section 21.409 prohibited FWISD from, during the period of her temporary disability leave of absence, terminating her contract or conducting proceedings regarding the termination of her contract. The commissioner made the following conclusions of law on this issue:

3. Texas Education Code § 21.409 prohibits a district from terminating a teacher's contract while the teacher is on temporary disability leave or because a teacher has a temporary disability. Termination occurs when the employer-employee relationship is formally severed.

4. Since Respondent voted to terminate Petitioner's contract only after Petitioner is no longer on temporary disability leave and because Petitioner was not terminated because she had a temporary disability, Respondent had not violated Texas Education Code § 21.409.

5. Even if a violation of Texas Education Code § 21.409 were shown, Petitioner would not prevail because such a procedural error has not led to an erroneous decision. Texas Education Code § 21.303(c).

The commissioner denied Weatherwax's appeal, ruling that the hearing examiner's findings were supported by substantial evidence, that FWISD possessed good cause to terminate Weatherwax's contract, and that FWISD did not violate education code section 21.409.

## VII. WEATHERWAX'S SUIT IN DISTRICT COURT

Weatherwax appealed the commissioner's decision to district court. She claimed that no evidence supported her termination for good cause, that FWISD violated education code section 21.409, and that no evidence existed that she had a "continuing contract" with FWISD.

## VIII. EDUCATION CODE SECTION 21.409

■ In their first issues, the commissioner and FWISD argue FWISD did not

---

**2.** DOAD Local Requirements are the rules governing termination of FWISD educators

employed under a continuing contract.

violate education code section 21.409 because that section does not prevent a school district from conducting proceedings to terminate a teacher's contract while the teacher is on a temporary disability leave of absence as long as the proposed termination is for good cause and is unrelated to the disability. Weatherwax, on the other hand, argues that FWISD clearly violated section 21.409 because, according to Weatherwax, the statute "precludes implementation and prosecution of the termination process, not just the final act of the school board in voting to terminate the teacher's contract." Weatherwax claims that the statute prohibits the school district from subjecting a temporarily disabled teacher to the sometimes lengthy and demanding termination process. According to Weatherwax, FWISD terminated her contract at the December 8, 1998 Board meeting while she was on temporary disability leave, and the fact that the Board delayed the effective date of her termination until she concluded her disability leave does not cure this violation of the statute.

The parties agree that whether section 21.409 precluded FWISD from proceeding with the termination process during the period of Weatherwax's temporary disability leave is a question of first impression. Section 21.409 provides, in pertinent part:

> (a) Each full-time educator employed by a school district shall be given a leave of absence for temporary disability at any time the educator's condition interferes with the performance of regular duties. *The contract or employment of the educator may not be terminated by the school district while the educator is on a leave of absence for temporary disability.*

TEX. EDUC.CODE ANN. § 21.409(a) (Vernon 1996) (emphasis added). Each party to this appeal asserts that the emphasized language quoted above is clear and unambiguous and supports their construction of this provision.

Each party's construction is persuasive. FWISD and the commissioner point out that Weatherwax was placed on paid leave while the February 24, 1998 incident was investigated and that Weatherwax's request for temporary disability leave, an unpaid leave, occurred on April 21, 1998, the same date that the school administration wrote a letter to Weatherwax informing her of its decision to recommend termination of her contract. FWISD argues that Weatherwax cannot use her temporary disability leave offensively to cut off its right to pursue termination of her contract for cause. FWISD complains that if it must halt ongoing termination-for-cause proceedings whenever a temporary disability leave is obtained, witnesses might leave the school district, change residences, disappear, or forget crucial details, thereby frustrating the accurate and timely determination of facts surrounding alleged teacher misconduct. Finally, FWISD argues that the record before us does not show Weatherwax was unable to participate in the proceedings because of her temporary disability.

Weatherwax points out that the commissioner may only review a board's *termination* of a teacher's contract and argues that the commissioner's failure to reject her appeal as premature demonstrates that she had been effectively and finally "terminated" while on temporary disability leave. *See* TEX. EDUC.CODE ANN. § 21.303(b) (addressing a determination by the commissioner when the "board of trustees *terminated* a teacher's ... contract...."). She claims that the plain language of the statute prohibits *any* termination while a teacher is on temporary disability leave. According to Weatherwax, whether or not the termination is for

good cause and whether or not proceedings commenced prior to any temporary medical disability leave is not relevant. She argues that the plain language of the statute prohibits any termination while on temporary disability leave, with no exception for terminations that "become effective" at a later date.

When interpreting statutes we try to give effect to legislative intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). In doing so, we look first to the plain and common meaning of the statute's words. *Id.* It is a fair assumption that the legislature tries to say what it means, and that therefore the words it chooses should be the surest guide to legislative intent. *Id.* at 866. Here, the legislature prohibited school districts from terminating an educator's contract or employment while the educator was on temporary disability leave. Tex. Educ.Code Ann. § 21.409(a). Giving the statutory provision its plain and common meaning, it prohibits only termination of a contract or of employment during an educator's temporary disability leave. It does not prohibit the continuation of an already-instituted investigation to procedural conclusion, short of actual termination. Thus, we hold that the plain meaning of the statute's words support the commissioner's decision and FWISD's position. Because the commissioner's construction of this statutory provision does not contradict the plain language of the provision, we give serious consideration to the commissioner's construction. *See Dodd*, 870 S.W.2d at 7.

The Code Construction Act also guides us in our interpretation of the laws of

Texas. *See* Tex. Gov't Code Ann. § 311.001–.032 (Vernon 1998). Regardless of whether the language of a statute is ambiguous on its face, the Code Construction Act allows a reviewing court to consider the object sought to be attained, any legislative history, and the consequences of a particular statutory construction. *Id.* § 311.023; *In re J.A.B.*, 13 S.W.3d 813, 816 (Tex.App.—Fort Worth 2000, no pet.).

Here, the object sought to be attained and the legislative history of section 21.409 demonstrate that the initial purpose of this provision was to ensure pregnant teachers received adequate maternity leave and were able to then return to their teaching posts after giving birth.[3] Weatherwax's construction of section 21.409 would authorize teachers being investigated by school administration for involvement in an incident to unilaterally halt the investigation and thwart possible termination proceedings by obtaining a temporary disability leave. Nothing in the statute's purpose or legislative history indicates that the statute was intended to be available as a vehicle to cutoff termination-for-cause proceedings already underway. Therefore, the consequences of Weatherwax's construction of section 21.409(a) are inconsistent with the plain language of the statute, the object sought to be attained by the statute, and its legislative history. We decline to construe the statute in this manner.

We likewise decline to construe the statute as broadly as requested by the commissioner and FWISD. We specifically do not hold that section 21.409 is never violated by a school administration's decision to pursue a good cause termination, unrelated to an educator's temporary disability, to

---

**3.** The bill sponsor stated, "My reasons for introducing this bill is [sic] simple. In the state of Texas, there exists several inequities concerning maternity leave policies. In most cases the rehiring is left solely at the discretion of the principal involved." *See* Debate on Tex. H.B. 740 before the House Committee on Education, Subcommittee on Public Education, 63rd Leg., R.S., 1 (April 3, 1973).

procedural conclusion while an educator is on temporary disability leave. Rather, we hold only that FWISD did not violate section 21.409(a) when it resolved to procedural conclusion its good-cause termination of Weatherwax's contract, based on an incident unrelated to Weatherwax's temporary disability, while Weatherwax was on temporary disability leave. The commissioner's construction of the statute and conclusions of law on this issue are not erroneous. We sustain the commissioner's first issue and FWISD's first issue.

## IX. SUBSTANTIAL EVIDENCE TO SUPPORT THE COMMISSIONER'S FINDINGS

Weatherwax, as the party appealing the commissioner's decision to district court, bore the burden of challenging specific findings of fact and conclusions of law made or adopted by the commissioner, and of demonstrating that the commissioner's findings were not supported by substantial evidence, and that his conclusions were erroneous. *See Miller*, at 681. *Accord Glodfelty*, at ——, No. 2–00–145–CV, slip op. at 16, 2001 WL 498539, at *7 (recognizing that in the district court appellees challenged "Reason for Nonrenewal No. 16" as not being supported by substantial evidence). As mentioned above, Weatherwax's original petition filed in district court asserts that no evidence supported her termination for good cause, that FWISD violated education code section 21.409,[4] and that no evidence existed she had a "continuing contract" with FWISD. Weatherwax's petition does not challenge any specific finding of fact as unsupported by substantial evidence.

The district court, however, reversed the commissioner's decision, providing no explanation of which findings of fact were not supported by substantial evidence or whether the commissioner's conclusions of law concerning section 21.409 were erroneous. *See* TEX. EDUC.CODE ANN. § 21.307(f). Therefore, we will review the evidence concerning each of the challenges Weatherwax asserted to the commissioner's decision in her district court petition.

### A. Good Cause for Termination

Weatherwax asserted in district court that FWISD presented no evidence establishing good cause for her termination. The commissioner and FWISD argue in their second issues on appeal that substantial evidence supports all of the commissioner's findings, including the finding that good cause existed for termination of Weatherwax's contract.

FWISD notified Weatherwax twice in writing that the proposed termination of her contract was based on the following grounds:

DOAD (Local):

5. Insubordination or failure to follow official directives;

6. Failure to comply with Board policies or administrative regulations;

13. Failure to meet District's standards of professional conduct.

DH (E)

Principle IV Ethical Conduct Toward Students

4. The educator shall make reasonable effort to protect the student from conditions detrimental to learning, physical health, mental health, and safety.

If substantial evidence exists supporting any one of the termination grounds, as found by the hearing examiner and adopted by the commissioner, then the

---

4. We have addressed FWISD's, the commissioner's, and Weatherwax's section 21.409 arguments above.

district court erred by reversing the commissioner's decision. *See id.* (providing that district court may reverse commissioner's decision only if it was not supported by substantial evidence); *Davis,* 34 S.W.3d at 562; *Glodfelty,* at ———, No. 2–00–145–CV, slip op. at 6, 2001 WL 498539, at *3.

■ The testimony presented before the hearing examiner demonstrates that Weatherwax was given an official directive and failed to follow it. Weatherwax herself testified that Principal Brasfield had instructed her the morning of February 24, 1998, that all persons in wheelchairs were to use the school's ramped exit. All witnesses agreed that when school was dismissed on February 24, 1998, Robert, a wheelchair-bound student, used the north, stepped exit to leave Weatherwax's classroom.

The hearing examiner found that Principal Brasfield was Weatherwax's direct supervisor and that he properly issued a lawful directive to her on the morning of February 24, 1998, namely, that she was to prevent her students from using the north door to exit her classroom because the north door was a safety risk. He found that Weatherwax failed to follow that directive. The commissioner adopted these findings. Based upon the evidence as a whole, reasonable minds could have reached this same conclusion. *See Davis,* 34 S.W.3d at 562; *Glodfelty,* at ———, 2–00–145–CV, slip op. at 7, 2001 WL 498539, at *3; *Miller,* at 685. We hold that substantial evidence exists to support the hearing examiner's findings, adopted by the commissioner, that Weatherwax was given an official directive and failed to follow it.

The hearing examiner made a conclusion of law that Weatherwax violated DOAD (Local) by being insubordinate and failing to comply with official directives. The commissioner adopted this conclusion. We cannot determine that this conclusion of law is erroneous based on the recited facts.

■ FWISD also asserted good cause to terminate Weatherwax's contract based on her failure to meet the district's standards of professional conduct requiring her to make reasonable efforts to protect the student from conditions detrimental to learning, physical health, mental health, and safety. Weatherwax testified it was her responsibility to ensure that her students safely boarded the school bus. All of the witnesses, except Weatherwax, agreed that Weatherwax was not present when Robert fell from his wheelchair using the north, stepped exit on February 24, 1998. Robert testified that Weatherwax was not helping him. The student on the school bus who witnessed the accident said Weatherwax was not present or helping Robert. The school bus assistant said that when she looked over at the scene immediately after Robert's fall and assisted him back into his wheelchair, Weatherwax was not present. Weatherwax's classroom assistant said she did not see Weatherwax in front of the school when Robert fell. Mirta Sonnen testified as an expert that it would never be a safe practice to allow a ten-year-old, handicapped, wheelchair-bound student to maneuver himself down the stepped exit in question.

The hearing examiner made findings that the testimony and evidence presented "paints a picture of Respondent temporarily and carelessly abandoning the few students she was charged to care for, with the foreseeable result being that one of them (Robert) was seriously injured, in a manner that could have exposed him to even worse injury than what he actually suffered." The commissioner adopted this finding. Based upon the evidence as a whole, reasonable minds could have reached this same conclusion. *See Davis,* 34 S.W.3d at 562; *Glodfelty,* at ———, No.

2-00-145-CV, slip op. at 7, 2001 WL 498539, at *3; *Miller*, at 685. We hold that substantial evidence exists supporting the determination that Weatherwax violated FWISD's standard of professional conduct by failing to make reasonable efforts to protect Robert from conditions detrimental to his physical health and safety.

The hearing examiner then concluded that Weatherwax "has violated DOAD (Local) by failing to meet FWISD's standards of professional conduct" by failing to make reasonable efforts to protect the health and safety of Robert, and in doing so violated her duties as a professional educator. The commissioner adopted this conclusion of law. Based on the evidence as a whole, we cannot hold that this conclusion of law is erroneous.

### B. CONTINUING CONTRACT

 Weatherwax asserted in district court that "FWISD failed to put forth any credible evidence that Plaintiff has a 'continuing' contract of employment" subject to termination by FWISD. FWISD, however, points to the following evidence, introduced before the hearing examiner, as constituting substantial evidence that Weatherwax was employed under a continuing contract. First, FWISD's letter to Weatherwax informing her she was being proposed for discharge explained that she had the right to oppose her proposed discharge and to request a hearing pursuant to education code sections 21.159 and 21.253. *See* TEX. EDUC.CODE ANN. §§ 21.159, 21.253 (Vernon 1996). These statutory provisions are applicable to only a teacher employed under a continuing contract. *See id.* §§ 21.159, 21.253. Weatherwax invoked these provisions and availed herself of the hearing and appeals available to her as a teacher employed under a continuing contract. *See id.* §§ 21.159, 21.253.

Second, FWISD points to administrator Bruce Wycoff's testimony that because the State did not define specific reasons justifying termination of an educator employed by a continuing contract, "we were left with the authorization from the State to develop our own reasons." Accordingly, FWISD implemented DOAD Local Requirements and it is these that FWISD asserted were violated by Weatherwax.

Third, FWISD points out that the commissioner specifically rejected Weatherwax's no-continuing-contract argument, writing:

> Petitioner contends that the contract was not placed in the record and that there is no evidence that Petitioner had a continuing contract. Petitioner is correct. However, this omission is not fatal. In the first place, Petitioner's counsel stated in opening argument 'My client has tenure.' The only type of contract that provides tenure rights is a continuing contract. As to term contracts, the legislature has provided, 'A teacher does not have a property interest in a contract beyond its term.' A probationary contract can be ended for any reason at the end of the contract's term. Only a continuing contract can be said to be a form of tenure.
>
> But even if the record was not clear as to the type of contract, Respondent has met all requirements for terminating a probationary, continuing, or term contract. A teacher must hold one of these contracts. To terminate a term or probationary contract during its term or to terminate a continuing contract, the same standard applies. Good cause must be shown to end any of these three employment relationships. Hence, it does not matter what type of contract is being terminated.

We hold that substantial evidence exists that Weatherwax was employed under a

continuing contract. We agree with the commissioner's conclusion and hold that, because substantial evidence existed supporting the determination that Weatherwax's contract was terminable for good cause, the type of contract she had with FWISD is not controlling.

Because the hearing examiner's finding of fact that Weatherwax's contract was terminated for cause is supported by substantial evidence and because substantial evidence demonstrates that Weatherwax was employed pursuant to a continuing contract, or alternatively, that the type of Weatherwax's employment contract was not relevant as a matter of law, we sustain the commissioner's and FWISD's second issue.

## X. CONCLUSION

Having sustained the commissioner's and FWISD's first and second issues, we reverse the district court's judgment and render judgment affirming the commissioner's decision.