IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 1, 2006

## STATE OF TENNESSEE v. JIMMY WAYNE GREEN

**Direct Appeal from the Circuit Court for Madison County**
**No. 04-700     Donald H. Allen, Judge**

_____

**No. W2005-02623-CCA-R3-CD  - Filed February 26, 2007**

_____

The Defendant, Jimmy Wayne Green, was indicted for theft of property and two counts of assault. In accordance with a plea agreement, he submitted a best interest plea to one count of assault in exchange for the State dismissing the other count of assault and the theft charge.  The trial court accepted the plea and sentenced the Defendant to eleven months and twenty-nine days, thirty days of which was to be served in confinement with the remainder to be served on probation.  The Defendant now appeals, contending that the trial court erred when it sentenced him.  Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and DAVID G. HAYES, J., joined.

Michael R. Giaimo, Livingston, Tennessee (on appeal) and Colin Morris, Jackson, Tennessee (at guilty plea hearing and sentencing) for the appellant, Jimmy Wayne Green.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from an assault that occurred in a Wal-Mart on June 5, 2004.  The Defendant pled guilty to this charge, and the following evidence was presented at his sentencing hearing:  Paige Mills testified that she worked as a security officer for Wal-Mart and that on June 5, 2004, she was working when she detained the Defendant's wife for shoplifting.  Mills took the Defendant's wife to Mills' office, and the Defendant came with them.  Once inside the office, Mills told them that she was going to charge the Defendant's wife with shoplifting, and, as she picked up the phone to call the Jackson Police Department, the Defendant and his wife started "yelling and screaming."  The

Defendant's wife then went out the office door, and Mills attempted to follow her. Mills said that the Defendant "slammed" her against a storage cabinet in the office.

Mills testified that she was able to exit the office, and she approached the Defendant's wife. The Defendant's wife told Mills that she was not going to stay at the store, and Mills followed her out the front doors of the store. Mills heard someone call her name, so she turned around and saw the Defendant coming toward her with a shopping cart full of merchandise. The Defendant "rammed" Mills in the wrist and the right leg with the shopping cart. At this point, the Defendant's wife "took off" across the parking lot, but Mills and Mills' manager, Tim Cummings, were able to apprehend the Defendant's wife. Mills' manager held onto the Defendant's wife from the back while Mills held her in the front. The Defendant came up behind Mills, grabbed her around the neck, and choked her. Cummings was able to get the Defendant off Mills, and the Defendant's wife ran across the parking lot. Mills caught up with the Defendant's wife, and the Defendant and his wife again engaged in a verbal confrontation with Mills. The Defendant went back and "grabbed" the merchandise from the cart that he had used to "ram[]" Mills.

Mills testified that, during all of this, an off-duty Jackson police officer approached them and asked Mills what was happening. The officer stepped between the Defendant and Mills and told them that squad cars were on the way. When the squad cars arrived, the Defendant and his wife were taken into custody.

Mills said that, as a result of this confrontation, she suffered a bruised leg and arm and red marks and bruises on her neck. She did not have to seek medical attention for these injuries, and she did not miss any work because of them.

On cross-examination, Mills testified that the Defendant was not with his wife when she saw the Defendant's wife peeling tags off pictures, but he was with her when she failed to scan the food item. Mills explained that she did not think that the Defendant knew that his wife had stolen anything because he told her there was no way that his wife would shoplift.

Jerry Hicks, an I.C.S. or maintenance associate for Wal-Mart, testified he worked with Mills at Wal-Mart, and he was present when she encountered the Defendant. He was going out the front door with a garbage cart when he saw Mills and the Defendant coming out of the office. He saw Mills with the Defendant's wife and Cummings restraining the Defendant. He described the Defendant as aggravated, upset, and ranting and raving. Hicks never saw any physical altercation between Mills and the Defendant.

The Defendant testified that he was a professional martial arts instructor in Cookeville, Tennessee, and he taught several police officers in that area. He said that he worked approximately seventy hours per week. The Defendant's wife had since passed away, and he recalled that she was heavily medicated at the time of this incident. The Defendant said that he would abide by the rules of probation if the judge granted him probation. The Defendant testified he had never been convicted of a felony, and he would like to put this incident behind him.

On cross-examination, the Defendant testified that he never touched Mills, but he agreed that he yelled at her. He said he "step[ped] into her space" but explained that he did so because his wife was being attacked in the parking lot. The Defendant agreed that he may have been convicted of some bad check charges in 1978, but he said he could not recall whether he was charged with breaking and entering in 1971.

Based upon this evidence, the trial court sentenced the Defendant as follows:

In this case, of course [the Defendant] has entered a plea to the offense of assault. I do recall at the time that he entered his plea to this charge . . . the facts were stated by the District Attorney General which is basically the same as what's been testified to here today that Ms. Mills testified that on this occasion that this Defendant . . . shoved her up against a storage cabinet; he rammed her with a shopping cart; he grabbed her around the neck and also made threats to kill her or kill the store manager. Now, I understand from what has been said here today and from what was stated at the time the best interest plea was entered that . . . obviously [the Defendant] got very upset about what was taking place with respect to his wife. That is, she was being detained for shoplifting and being accused by the Wal-Mart employees of shoplifting and [the Defendant] did not agree with that. That still didn't give him the right to in any way assault Ms. Mills, which obviously that's what he has pled guilty to or pl[ed] best interest to is assaulting her. You know, this is an unfortunate situation because had [the Defendant] been able to control his behavior, I'm not sure what would have happened with Mrs. Green's case, but certainly [the Defendant] probably would not have been arrested out there that day. He wasn't accused of stealing anything, but certainly he let his behavior get out of control out there that afternoon, and unfortunately Ms. Mills suffered some injury. She told me here today that she had a bruise on her leg and a bruise on her arm and a bruise on her neck. I do credit the testimony of Ms. Mills. I don't know why else she would come in here and make these statements under oath and say that this happened to her. And then, of course, [the Defendant] has now stated under oath that he never touched her. Although he has entered a plea to this offense, a best interest plea, he still maintains he never touched her. I don't credit his testimony in that regard. I do find that he did, in fact, assault her as Ms. Mills said.

Now, . . . [the Defendant] does have [a] prior record: Driving without a license, convicted of that back in 1999; also some old convictions for passing worthless checks back in 1978 in the state of Ohio. Certainly that is some criminal behavior and I will give that some consideration, enhancing consideration.

Now, when you look at the facts and circumstances of this case and you look at what harm [the Defendant] caused, the Court finds that the appropriate sentence would be a sentence of 11 months and 29 days to the Madison County Jail or workhouse at 75 percent release eligibility status. . . .

. . . .

Now, as far as the State's request for some shock incarceration, and, of course, the Defense is asking the Court to suspend the jail time and place him on probation, taking in light the circumstances involved in this case, the facts and circumstances, certainly [the Defendant] had no business grabbing Ms. Mills around the neck; had no business ramming her with a shopping cart; had no business touching her in any regard; and certainly had no reason or no right to threaten her in any manner. I understand he was upset, but that still doesn't give him the right to act that way. It's unfortunate. Because of that, the Court is going to order that he serve 30 days of this sentence in the local county jail. He will serve the 30 days and then the balance he will be placed on probation.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it failed to order that his entire sentence be served on probation. First, he asserts that the trial court failed to consider the purposes and principles of sentencing by failing to acknowledge the various enhancement and mitigating factors. Second, the Defendant asserts that the trial court erred when it "ignored" the contradictory testimony of the prosecution witness, Hicks, and the Defendant.[1] When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001); State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d

---

[1]The Defendant also addresses the Sentencing Reform Act, stating that there should be a presumption of probation for misdemeanants. He recognizes that this contradicts prior case law but asserts that the prior case law is wrong and should be overturned. The Defendant then declines to address the issue in his brief, but he attempts to reserve the issue for review by the Tennessee Supreme Court. Accordingly, we decline to address this issue.

400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2003), Sentencing Comm'n Cmts.

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence, even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In the case under submission, the Defendant was convicted of a class A misdemeanor. See Tenn. Code Ann. § 39-13-101(a)(1)(2) (2003). In misdemeanor sentencing, the sentence imposed must be specific and consistent with the purposes and principles of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. § 40-35-302(b) (2003). A percentage of not greater than seventy-five percent of the sentence should be fixed for service, after which the Defendant becomes eligible for "work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. § 40-35-302(d). In this case, the trial court set the Defendant's percentage for service at seventy-five percent.

The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). However, in determining the percentage of the sentence to be served in actual confinement, the trial court must consider enhancement and mitigating factors, as well as the purposes and principles of the Criminal Sentencing Reform Act of 1989, and the court should not impose such percentages arbitrarily. Tenn. Code Ann. § 40-35-302(d). Our Supreme Court has observed that "[i]n addition to the statutory considerations for issuing sentences of confinement, the misdemeanor sentencing statute merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). This Court has stated:

> In felony sentencing, the trial court has an affirmative duty to state in the record, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. § 40-35-209(c) (1997); Tenn. Code Ann. § 40-35-210(f) (Supp.1998); State v. Troutman, 979 S.W.2d 271, 274 (Tenn.1998). In contrast, the misdemeanor sentencing statute only requires that the trial court *consider* the enhancement and mitigating factors when calculating the percentage of the sentence to be served in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. §§ 40-35-302(d) (1997); Troutman, 979 S.W.2d at 274.

State v. Russell, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999). Our statutory system concerning misdemeanor sentencing is designed to provide trial courts with continuing jurisdiction and a great deal of flexibility. See Tenn Code Ann. § 40-35-302(d), Sentencing Comm'n Cmts.; State v. Boyd,

925 S.W.2d 237, 244 (Tenn. Crim. App. 1995).

In the case under submission, the Defendant first contends that the trial court "failed to embrace the purposes and principles of sentencing . . . in particular, failed to acknowledge the various enhancement and mitigating factors." As previously stated, in misdemeanor sentencing, the trial court need not articulate in the record which enhancement and mitigating factors it finds applicable; rather, it need only consider them. Further, it is clear that the trial court considered the Defendant's prior criminal history, which included a conviction for driving without a license. The Defendant contends that the presentence report did not show that he had been previously convicted of writing a worthless check in Ohio. Notably, on appeal the Defendant does not submit that he was not convicted of this crime but that this conviction was not revealed in the presentence report. Under these circumstances, we conclude that the trial court properly considered this enhancement factor. Further, we conclude that the lack of other findings is no basis for holding the trial court in error. See Russell, 10 S.W.3d at 278.

The Defendant next contends that the trial court erred when it "ignored" the testimony of Hicks and the Defendant that "contradict[ed]" Mills testimony. Hicks testified that he never saw a physical altercation between Mills and the Defendant. He, however, never indicated that he saw the entire incident or that no physical altercation occurred. Therefore, we do not conclude that Hicks' testimony contradicted Mills' testimony. We do note that the Defendant's own testimony contradicted that given by Mills. The trial court found Mills' testimony to be credible and discredited the Defendant's testimony that he never touched Mills. We give great weight to the trial court's determinations concerning the credibility of witnesses. State v. Raines, 882 S.W.2d 376, 383 (Tenn. Crim. App. 1994). The evidence supports the trial court's determination, and the Defendant is not entitled to relief on this issue.

## III. Conclusion

In accordance with the foregoing, we conclude that the trial court committed no error in sentencing the Defendant. Therefore, the judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE