ACCEPTED
15-25-00024-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
4/17/2025 2:08 PM
CHRISTOPHER A. PRINE
CLERK

CASE NO. 15-25-00024-CV

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT OF TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
4/17/2025 2:08:32 PM
CHRISTOPHER A. PRINE
Clerk

**MIKE MORATH, TEXAS COMMISSIONER OF EDUCATION; and LA VILLA INDEPENDENT SCHOOL DISTRICT**,

*Appellants*,

v.

**DR. PAZ ELIZONDO**,

*Appellee*.

---

## APPELLANT BRIEF OF MIKE MORATH, TEXAS COMMISSIONER OF EDUCATION

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

ERNEST C. GARCIA
Chief, Administrative Law Division

KAREN L. WATKINS
State Bar No. 20927425
Assistant Attorney General
Administrative Law Division
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel. (512) 475-4208
Fax (512) 320-0167
karen.watkins@oag.texas.gov

*ATTORNEYS FOR APPELLANT MIKE MORATH, TEXAS COMMISSIONER OF EDUCATION*

# IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellant:** | **MIKE MORATH, TEXAS COMMISSIONER OF EDUCATION** |

| | |
|---|---|
| **Trial Counsel for Appellant:** | Craig W. Cosper<br>State Bar No. 24067554<br>Assistant Attorney General[1] |

| | |
|---|---|
| **Appellate Counsel for Appellant:** | Karen L. Watkins<br>State Bar No. 20927425<br>Assistant Attorney General<br>Administrative Law Division<br>OFFICE OF THE ATTORNEY GENERAL OF TEXAS<br>P. O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>Telephone: (512) 475-4208<br>Facsimile: (512) 320-0167<br>Email: karen.watkins@oag.texas.gov |

| | |
|---|---|
| **Appellant:** | **LA VILLA INDEPENDENT SCHOOL DISTRICT** |

| | |
|---|---|
| **Trial and Appellate Counsel for Appellant:** | David Campbell<br>State Bar No. 24057033<br>Kristi L. Godden<br>State Bar No. 24079577<br>kgodden@808west.com<br>Eden Ramirez<br>Texas Bar No. 24112355<br>eramirez@808west.com<br>Johan Holter<br>Texas Bar No. 24106107<br>jholter@808west.com |

---

[1] Assistant Attorney General Cosper was formerly with the Administrative Law Division of the Office of the Attorney General but has now transferred to the Criminal Appeals Division.

2

O'Hanlon, Demerath & Castillo
808 West Avenue
Austin, Texas 78701
Tel. (512) 494-9949
Fax (512) 494-9919


**Appellee:**                    **DR. PAZ ELIZONDO**

**Trial and Appellate**
**Counsel for Appellee:**        RUBEN R. PEÑA
                                 State Bar No. 15740900
                                 LAW OFFICES OF RUBEN R. PEÑA, P.C.
                                 222 W. Harrison, Suite B
                                 Harlingen, Texas 78550
                                 Tel. (956) 496-2060
                                 ruben@rubenpenalaw.com

3

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ 2

INDEX OF AUTHORITIES ............................................................................ 5

ABBREVIATIONS AND RECORD REFERENCES ...................................... 7

STATEMENT OF THE CASE ......................................................................... 7

STATEMENT REGARDING ORAL ARGUMENT ....................................... 9

ISSUES PRESENTED .................................................................................... 9

STATEMENT OF FACTS ............................................................................ 10

SUMMARY OF THE ARGUMENT ............................................................. 14

ARGUMENT ............................................................................................... 14

    I.    Standard of Review ....................................................................... 14

    II.   The Commissioner properly declined to address the merits
       of Elizondo's appeal because Elizondo did not timely complain ................. 16

    III.  Elizondo waived his right to complain about the District's giving
       him a probationary contract by acting inconsistently with an intent
       to exercise that right ...................................................................... 23

CONCLUSION AND PRAYER .................................................................... 26

CERTIFICATE OF COMPLIANCE ............................................................. 27

CERTIFICATE OF SERVICE ...................................................................... 28

APPENDICES .............................................................................................. 29

# INDEX OF AUTHORITIES

## Cases

*Davis v. Morath*,
624 S.W.3d 215 (Tex. 2021) ........................................................................ 17, 20, 21, 22

*Edinburg Consol. Indep. Sch. Dist. v. Esparza*,
603 S.W.3d 468 (Tex. App.—Corpus Christi 2020, no pet.) ..................................... 15

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth*,
22 S.W.3d 831 (Tex. 2000) ....................................................................................... 23

*Hammack v. Pub. Util. Comm'n*,
131 S.W.3d 713 (Tex. App.—Austin 2004, pet. denied) ........................................... 15

*Heritage on the San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envt'l Qual.*,
393 S.W.3d 417 (Tex. 2012) ................................................................................ 14, 15

*In re McKinney*,
167 S.W.3d 833 (Tex. 2005) ................................................................................ 18, 25

*In re Prudential Ins. Co. of Am.*,
148 S.W.3d 124 (Tex. 2004) ................................................................................ 24, 25

*Indem. Ins. Co. of N. Am. v. W. L. Macatee & Sons*,
101 S.W.2d 553 (Tex. 1937) ..................................................................................... 18

*Jenkins v. Crosby Indep. Sch. Dist.*,
537 S.W.3d 142 (Tex. App.—Austin 2017, no pet.) .................................................. 15

*McCarty v. Jim Ned Consol. Ind. Sch. Dist.*,
TEA Docket No. 052-R10-08-2021, 2022 WL 1997524 (Mar. 1, 2022) ............. 11, 22

*McCarty v. Jim Ned Consol. Ind. Sch. Dist.*,
TEA Docket No. 052-R10-08-2021, 2022 Tx. Educ. Agency LEXIS 7
(May 5, 2022) ............................................................................................................ 17

*Mike Morath, Tex. Comm'r of Educ. v. Dr. Pax Elizondo*,
No. 03-23-00125-CV, 2025 WL 270611 (Tex. App.—Austin Jan. 23, 2025) ............. 8

5

*Montgomery Indep. Sch. Dist. v. Davis,*
   34 S.W.3d 559 (Tex. 2000) ........................................................................ 15

*N. E. Indep. Sch. Dist. v. Riou,*
   598 S.W.3d 243 (Tex. 2020) ....................................................................... 16

*Peaster Indep. Sch. Dist. v. Glodfelty,*
   63 S.W.3d 1 (Tex. App.—Fort Worth 2001, no pet.) ................................... 15

*Poole v. Karnack Indep. Sch. Dist.,*
   344 S.W.3d 440 (Tex. App.—Austin 2011, no pet.) ..................................... 14

*Simani v. Hous. Indep. Sch. Dist.,*
   TEA Docket No. 021-R10-03-2019, 2019 WL 4393596 (Aug. 30, 2019)........... 16, 20

*Solar Applications Eng'g, Inc. v. T.A. Operating Corp.,*
   327 S.W.3d 104 (Tex. 2010) ....................................................................... 23

*Wittman v. Nelson,*
   100 S.W.3d 356 (Tex. App.—San Antonio 2002, pet. denied)............................21, 25

**Statutes**
Tex. Educ. Code
   § 7.057(d) ................................................................................................ 14
   § 21.102(b) ............................................................................................ 8, 13
   § 21.103 .................................................................................................... 21
   § 21.103(a) ................................................................................................ 21
   §§ 21.206-21.211 ....................................................................................... 21

Tex. Gov't Code
   § 2001.174 ................................................................................................. 14

## ABBREVIATIONS AND RECORD REFERENCES

La Villa App. [Page #][2]                Appendices to La Villa ISD's Brief[3]

ALJ                                                Administrative Law Judge

App. [Letter]                              Appendices to this brief

## STATEMENT OF THE CASE

La Villa Independent School District (La Villa ISD) terminated the employment of Dr. Paz Elizondo in the spring of 2021. La Villa App. at 42. Elizondo lodged a formal complaint about his termination, arguing that he had been entitled to a term contract for his second year of employment with La Villa ISD, rather than the probationary contract he signed. La Villa App. at 88-9. The La Villa ISD Board deemed Elizondo's complaint untimely and refused to hear its merits. La Villa App. at 117-18. Elizondo appealed the Board's decision to the Commissioner of Education, and the Commissioner denied the appeal, finding substantial evidence that: (1) Elizondo's grievance was untimely, and (2) Elizondo had performed under the probationary contract for a year and had accepted its benefits, waiving his right to grieve the type of

---

[2] The administrative record is included in the appendix to the Brief of La Villa Independent School District. References to the appendix will be in the following form: La Villa App. [page #].

[3] Some pages in the La Villa Appendix bear several different numbers. The page numbers from the La Villa Appendix are found at the bottom left-hand side of the page in red.

contract provided to him. La Villa App. at 262-67.[4] Elizondo timely filed a motion for rehearing, La Villa App. at 273-76, which was overruled by operation of law. La Villa App. at 5.

Elizondo then filed the underlying suit for judicial review of the Commissioner's decision and, in addition, sought a declaration under the Uniform Declaratory Judgments Act (UDJA) of his rights under Section 21.102(b) of the Texas Education Code. La Villa App. at 5-8. After considering briefing and arguments from Elizondo, La Villa ISD, and the Commissioner, the trial court reversed the Commissioner's decision and denied his plea to the jurisdiction as to Elizondo's UDJA claim. La Villa App. at 410.[5] The Commissioner timely appealed the trial court's judgment to the Third Court of Appeals. La Villa App. at 411-13.

After submission of the case, the Third Court issued an order abating the case and remanding it to the trial court, expressing uncertainty about whether the court had intended to dispose of the UDJA claim in its amended judgment. *See Mike Morath, Texas Commissioner of Education, et al. v. Dr. Paz Elizondo*, Case No. 03-23-00125-CV, 2025 WL 270611 (Tex. App.—Austin Jan. 23, 2025). The appellate court directed the trial court either informing the appellate court that it did not intend to dispose of the UDJA claim

---

[4] A true and complete copy of the Decision of the Commissioner is attached to this brief as Appendix B.

[5] A true and complete copy of the trial court's Second Amended Final Judgment is attached to this Brief as Appendix A.

or file a supplemental record containing a new judgment specifically stating that intention. *Id.* On February 12, 2025, the trial court signed a Second Amended Final Judgment reversing the Commissioner's decision and granting the Commissioner and La Villa ISD's pleas to the jurisdiction. App. A. The Commissioner timely appealed this new judgment to the Fifteenth Court of Appeals. La Villa App. 455-57.

## STATEMENT REGARDING ORAL ARGUMENT

Commissioner Morath believes that this straightforward examination of the sufficiency of the evidence to support his decision does not require argument. However, if the Court disagrees, the Commissioner respectfully requests the right to participate in the argument.

## ISSUES PRESENTED

1. Did the trial court err by reversing the Commissioner's decision when there was substantial evidence to support it?

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT OF TEXAS

**MIKE MORATH, TEXAS COMMISSIONER OF EDUCATION; and LA VILLA INDEPENDENT SCHOOL DISTRICT**,
*Appellants*,

v.

**DR. PAZ ELIZONDO**,
*Appellee.*

**APPELLANT BRIEF OF MIKE MORATH,
TEXAS COMMISSIONER OF EDUCATION**

TO THE HONORABLE JUSTICES OF THE FIFTEENTH COURT OF APPEALS:

COMES NOW Appellant Mike Morath, Texas Commissioner of Education, by and through his attorney of record, Ken Paxton, Attorney General of the State of Texas, and the undersigned assistant attorney general, and files this Brief of Appellant to challenge the trial court's February 12, 2025, Second Amended Final Judgment.

**STATEMENT OF FACTS**

Elizondo began working for La Villa ISD as an administrator under a "First-Year Probationary Contract" during the 2019–2020 school year. La Villa App. at 34-37; 263 (Finding of Fact 1). On or about April 22, 2020, Elizondo signed a second contract

with LaVilla ISD for the 2020–2021 school year.  La Villa App. at 101-04; 263 (Finding of Fact 2).  The third line on the first page of this contract, centered and in bold font, sets out the title "**Second-Year Probationary Contract**."[6]  La Villa App. at 101 (emphasis in original).  The third page of the contract specifies that, at its termination, La Villa ISD would have the ability to terminate Elizondo's employment if the termination would "serve the best interests of the District, or if the Board determine[d] that good cause or a financial exigency exists."[7]  La Villa App. at 103.  On the same page, immediately preceding Elizondo's signature line on the following page, is the statement "I have read this Contract and agree to abide by its terms and conditions*."* *Id.* (emphasis added).

Near the end of the school year, on April 26, 2021, La Villa's Board notified Elizondo that it had voted to terminate his employment at the end of the second

---

[6] As the Commissioner held in *McCarty v. Jim Ned Consol. Ind. Sch. Dist.*, 2022 WL 1997524 (Comm'r Educ. 2022), probationary contracts set up a testing period for teachers:

> The relevant definition of the word "probation" is "**2a:** subjection of an individual to a period of testing and trial to ascertain fitness (as for a job or school).  *See* https://www.merriam-webster.com/dictionary/probation.  Texas Education Code Chapter 21, Subchapter C is appropriately titled, "Probationary Contracts."  As statutorily prescribed, Texas probationary contracts allow school districts testing periods to ascertain teachers' fitness.

*Id.* at *3.

[7] The entire provision reads: "**Termination of Contract**: This Contract will terminate in accordance with the procedures at Texas Education Code chapter 21, if the Board determines that termination of your contract at the end of the contract period will serve the best interests of the District, or if the Board determines that good cause or financial exigency exists.  This Contract will also terminate if you provide written notice of resignation before the penalty-free resignation date."  La Villa App. at 103 ¶ 9 (emphasis in original).

contract's term because it was in the best interest of the District. La Villa App. at 107.

On April 29, 2021, Elizondo made a formal complaint to La Villa ISD, stating the following as the "specific acts of which [he was] aware to support [his] complaint":

> I had been previously employed as a teacher in public education for at least 5 of the 8 years preceding employment by the district per Texas Education Code section 21.102[,] and the District is required to provide me with a term contract.

La Villa App. at 108-109. Pursuant to La Villa ISD's employee complaint policy, La Villa's chief academic officer dismissed Elizondo's complaint as untimely because Elizondo did not file the complaint within fifteen days after he first knew or should have known that La Villa ISD had given him a probationary contract rather than a term contract. La Villa App. at 118. When Elizondo appealed that determination to the Board of La Villa ISD, the Board members voted unanimously to deny his complaint. La Villa App. at 210.

Elizondo then sought the Commissioner's review of the Board's decision. La Villa App. at 30-49; 263 (Finding of Fact 6). Because Elizondo did not appear at the scheduled hearing, the Texas Education Agency administrative law judge (ALJ) decided the case on the briefs. *Id.* The ALJ issued a Proposal for Decision concluding that Elizondo had failed to timely file his complaint about the type of contract La Villa ISD gave him for the 2020-2021 school year because substantial evidence showed that he knew or should have known, with reasonable diligence, that he was employed under a probationary contract when he signed the contract on April 22, 2020. La Villa App. at

12

243-48. The ALJ also concluded that Elizondo had waived his right to challenge the terms of the probationary contract because he knowingly and voluntarily acted inconsistently with that right when he accepted the salary and benefits the contract provided to him. La Villa App. at 247 (Conclusion of Law 4).

On February 22, 2022, the Commissioner adopted the ALJ's proposal and signed a decision denying and dismissing Elizondo's appeal based on his untimely grievance and waiver of his right to challenge the contract. La Villa App. 262-267. Elizondo timely filed a Motion for Rehearing, La Villa App. 273-277, which was overruled by operation of law. La Villa App. 5.

Elizondo then sued for judicial review of the Commissioner's decision and a declaration of his rights under Texas Education Code § 21.102(b) and La Villa ISD's Policy DCA, seeking reversal of the Commissioner's decision and reinstatement to his prior position with a term contract, along with awards of court costs and attorney's fees. La Villa App. 1-8. The Commissioner filed a plea to the jurisdiction to challenge the trial court's ability to entertain Elizondo's UDJA claim and his request for attorney's fees. La Villa App. 9-13. After all parties had briefed the case, the trial court heard argument.

On January 24, 2023, the trial court signed a final judgment reversing the Commissioner's decision in the case, although the date typed on the order was "24th day of January 2022." La Villa App. 409. On February 10, 2023, the trial court filed an

13

amended final judgment with the district clerk; the year of signature was corrected to read "2023," rather than "2022." La Villa App. 410. The Commissioner timely perfected this appeal of the trial court's amended final judgment. La Villa App. 411-413.

## SUMMARY OF THE ARGUMENT

The Commissioner properly concluded that Elizondo failed to timely file a grievance because there was substantial evidence showing that he knew or should have known, with reasonable diligence, that he had a probationary contract when he executed it. Additionally, the Commissioner correctly determined that Elizondo waived his right to challenge the terms of his contract because he knowingly and voluntarily acted inconsistently with that right by accepting the salary and benefits of that contract. Therefore, for the same reasons the Commissioner upheld La Villa ISD's decision to terminate Elizondo's contract, this Court should reverse the trial court's erroneous amended final judgment and affirm the Commissioner's decision.

## ARGUMENT

### I. Standard of Review

This Court reviews the Commissioner's decision under the "substantial evidence" standard. Tex. Educ. Code § 7.057(d); Tex. Gov't Code § 2001.174; *Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 443 (Tex. App.—Austin 2011, no pet.); *see also Heritage on the San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envt'l Qual.*, 393 S.W.3d

14

417, 424 (Tex. 2012) ("On appeal from the district court's judgment, the focus of the appellate court's review, as in the district court, is on the agency's decision."). Whether substantial evidence exists to support the Commissioner's decision is a question of law. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 566 (Tex. 2000).

However, "substantial evidence" in this context "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Edinburg Consol. Indep. Sch. Dist. v. Esparza*, 603 S.W.3d 468, 478 (Tex. App.—Corpus Christi 2020, no pet.) (quoting *Hammack v. Pub. Util. Comm'n*, 131 S.W.3d 713, 725 (Tex. App.—Austin 2004, pet. denied) (internal quotation marks omitted)). "Substantial evidence review is a limited standard of review, requiring only more than a mere scintilla [of evidence] to support an agency's determination." *Davis*, 34 S.W.3d at 566. It is "a limited standard that gives great deference to an agency in its field of expertise." *Peaster Indep. Sch. Dist. v. Glodfelty*, 63 S.W.3d 1, 5 (Tex. App.—Fort Worth 2001, no pet.).

"If, based on the evidence as a whole, reasonable minds could have reached the same conclusion as the Commissioner, then the Commissioner's decision is supported by substantial evidence." *Id.* "Essentially, this is a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record." *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.).

15

If the Commissioner's decision is reasonable, it satisfies the substantial evidence standard. *N. E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020).

## II. The Commissioner properly declined to address the merits of Elizondo's appeal because Elizondo did not timely complain.

As noted above, the Commissioner did not consider Elizondo's arguments about the illegality of his second probationary contract because the Commissioner found substantial evidence to support La Villa ISD's determination that Elizondo's complaint was untimely under its policies and the relevant facts.

School districts have an interest in resolving complaints promptly and, to further that interest, may require complaints to be filed promptly. *See Simani v. Hous. Indep. Sch. Dist.*, TEA Docket No. 021-R10-03-2019, 2019 WL 2895250 (Aug. 30, 2019) (also located at La Villa App. at 120-128). La Villa ISD has adopted such a local policy, DGBA (Local), which reflects the district's interest in resolving complaints promptly by requiring complaints to be filed "[w]ithin 15 days of the date the employee first knew, or with reasonable diligence should have known, of the decision or action giving rise to the complaint or grievance." La Villa App. at 153. Untimely complaints[8] are subject to dismissal under La Villa ISD's Policy DGBA(Local). La Villa App. at 152. As the Supreme Court of Texas recently held, if a school district's internal procedures preclude

---

[8] Although the Commissioner used the term "grievance" in his decision and uses it, generally, to refer to the same type of document, La Villa ISD's local policy refers to it as a "complaint." For the sake of consistency, the Commissioner will use the term "complaint" in this Brief.

16

it from reaching the merits of a late-filed complaint, the scope of the Commissioner's appellate review is limited, as well. *See Davis v. Morath*, 624 S.W.3d 215, 223 (Tex. 2021).

Elizondo contends the Commissioner erred by finding his complaint untimely. The undisputed evidence in the record, however, belies this contention. Instead, the evidence supports the Commissioner's determination that Elizondo knew or *should have known* that his contract was a probationary contract when he signed it.[9] The contract is entitled "Second-Year Probationary Contract." La Villa App. at 131. The contract contains termination language applicable only to probationary contracts, allowing termination of Elizondo's employment at the end of the contract term if the Board determines that termination serves the District's best interests. La Villa App. at 133. The contract had only three pages of readily understandable terms and was substantially similar to the probationary contract that Elizondo had signed with La Villa ISD the previous year. La Villa App. at 131-134; 135-138. Furthermore, immediately preceding Elizondo's signature was the statement: "I have read this Contract and agree to abide by its terms and conditions." La Villa App. 133.

The record also contains no evidence that Elizondo filed a complaint asserting his entitlement to a term contract for the 2020-2021 school year or any other action he took to bring this complaint to La Villa ISD's attention at any point during the school

---

[9] For a detailed differentiation between probationary and term contracts, *see McCarty v. Jim Ned Consol. Indep. Sch. Dist.*, TEA Docket No. 052-R10-08-2021, 2022 Tx. Educ. Agency LEXIS 7 (May 5, 2022) (the Commissioner determined that a petitioner's claim concerning an allegedly improper probationary contract was untimely and waived because the petitioner waited almost a year to complain).

year. His failure deprived La Villa ISD of any opportunity to address the complaint immediately, although it has a strong interest in the type of contracts and associated rights afforded to its employees. Elizondo did not file his complaint until April 29, 2021, after the Board had informed him of its decision to terminate his employment. La Villa App. at 42. Therefore, it was appropriate for both La Villa ISD and the Commissioner to conclude that Elizondo's complaint was untimely and to dismiss the complaint because it was not filed within fifteen days of April 22, 2020. That was the date on which Elizondo, had he exercised any diligence at all, should have known that he was signing another probationary contract. All of these facts amount to substantial evidence supporting the Commissioner's finding that Elizondo's complaint was untimely.

Elizondo's signing the probationary contract has a significant legal effect. In the absence of fraud, misrepresentation, or lack of capacity, signatories to contracts always been charged with knowledge of what they have signed.

> Every person having capacity to make a contract, in the absence of fraud, misrepresentation, or concealment, must be held to have known what the words used in a contract made by him were, and to have known their meaning; and he must also be held to have known and fully comprehended the legal effect of the contract which the words used made.

*Indem. Ins. Co. of N. Am. v. W. L. Macatee & Sons*, 101 S.W.2d 553, 556 (Tex. 1937); *see also In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) ("absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether

18

he read it or thought it had different terms"). Elizondo made no attempt to show that he lacked capacity to execute the second probationary contract or that there was fraud, misrepresentation, or concealment by La Villa ISD in providing him that contract.

Instead, Elizondo willingly signed and returned the probationary contract. He did not alert La Villa ISD to its alleged mistake. He did not object to being given a probationary contract or seek clarification about why he was provided one. Most importantly, he did not file a complaint. Therefore, under fundamental principles of contract law, Elizondo cannot claim ignorance of his "Second-Year Probationary Contract" or its terms.

At the trial court, Elizondo ignored these principles and his execution of the contract and, instead, claimed that his complaint was timely because he filed it within 15 days of his termination, which he contended was the "'action' alleged to be illegal" and "gave rise to the grievance." La Villa App. at 290. Elizondo's own complaint contradicts this assertion because it does not mention his termination. When asked about the facts supporting his complaint, Elizondo wrote only:

> I had been previously employed as a teacher in public education for at least 5 of the 8 years preceding employment by the La Villa Independent School District. As per the Texas Education Code section 21.102, the District is required to provide me with a term contract.

La Villa App. at 89. Elizondo's own words set out a complaint about the type of contract he entered into, not about the termination of his employment. Thus, his complaint a year after he was given a probationary contract, rather than a term contract,

was untimely. *See Davis*, 624 S.W.3d at 224–226 (recognizing that a grievance may be time barred if the grievance is not timely filed after the complained of action or decision occurred); *Simani v. Houston Indep. Sch. Dist.*, 2019 WL 4393596, *3-4 (also located at La Villa App. at 91–100).

Elizondo has argued, however, that *Davis* supports the timeliness of his complaint because he was not harmed by having been provided a probationary contract until the Board decided to terminate him. He contends that his termination was the illegal "decision or action" that gave rise to his complaint. La Villa App. at 289-291.

But as the Commissioner correctly determined, *Davis* is distinguishable. It did not involve a teacher contract, but rather addressed a district wide school appraisal system. *Davis*, 624 S.W.3d at 218–19. There, the teachers complained about not only the appraisal system, but about the allegedly illegal scorecards resulting from the operation of that system. The teachers' grievances were filed within the period permitted by the Dallas school district's grievance policy. *Id.* at 225. Dismissing the school district's argument that the teachers were actually complaining about the appraisal system that it had adopted a year earlier, the Court held that, because the teachers had alleged that the scorecards were illegal, their grievance was timely. *Id.* ("The law does not give the Board any authority to decide for itself which 'action' the Teachers are challenging. Like any other plaintiff or administrative complainant, the Teachers are entitled to frame their own grievance."). Conversely, in this case, La Villa

20

ISD did not recharacterize Elizondo's complaint. Instead, it took him at his word, that he was complaining about the type of contract La Villa ISD offered him and he executed. *Compare* La Villa App. at 89 *with* La Villa App. at 117. The Commissioner did the same.[10] La Villa App. at 298.

Elizondo also argued that *Davis* supports his timeliness argument because, there, the Court essentially held a complaint could not accrue until the complainant has suffered harm. La Villa App. at 289-290. The *Davis* Court determined that each teacher was unaware of the appraisal system's effects on him or her until the scorecards issued; thus, they did not know they were aggrieved until they received their scorecards. *Davis*, 624 S.W.3d at 226. In this case, however, Elizondo knew when he signed the second-year probationary contract that its termination provision would allow La Villa ISD to end his employment at the end of the contract term if the District decided that doing so was in its best interest. As Elizondo argued to the trial court, term contracts provide greater procedural protection for educators than do probationary contracts, La Villa App. at 287, particularly regarding terminating an educator's employment. *Compare* Tex. Educ. Code § 21.103(a) *with* Tex. Educ. Code §§ 21.206-21.211. When Elizondo did not see term-contract protections in the contract he was offered, he actually knew or should have known that he was, at that point, injured by the lack of the protections to

---

[10] In fact, Elizondo had no choice but to complain about the type of contract he was offered. Because a decision to terminate a probationary contract is final and may not be appealed, Tex. Educ. Code § 21.103; *see also Wittman v. Nelson*, 100 S.W.3d 356, 361 (Tex. App.—San Antonio 2002, pet. denied), he could not complain about his termination.

21

which he felt entitled. His alleged injury accrued then, and he should have sought a term contract immediately or, failing that, lodged a complaint about not having been given one. Unlike the *Davis* teachers, Elizondo actually knew or should have known that he was aggrieved when he was offered a contract containing fewer protections for his continued employment.

Accepting Elizondo's interpretation of *Davis* would allow underperforming teachers to take advantage of school districts. As the Commissioner has pointed out:

> For example, the district, believing the teacher has a probationary contract, provides notice that the school board has voted that the best interests of the district will be served by terminating the teacher's employment. The teacher files a grievance contending that a year ago, she received the wrong type of contract. It is not very likely that the school district could resolve the grievance, grant Petitioner a term contract, and propose the contract for nonrenewal before the deadline for filing a notice of proposed nonrenewal. By laying behind the log, the teacher could prevent the district from terminating her contract that school year.

*McCarty*, 2022 WL 1997524, *6. The result would be that poor teachers would be given new contracts only because the district had made a (correctable) error about the type of contract the teachers should have been given. The school children of Texas are not well served by this interpretation.

Because (a) nothing in *Davis* supports Elizondo's contention that he timely asserted his complaint and (b) the undisputed evidence in the record shows that Elizondo knew or, in the exercise of reasonable diligence, should have known of the action giving rise to his complaint a year before he filed it, when he was signing the

22

"Second-Year Probationary Contract," the Commissioner correctly determined that Elizondo's complaint was untimely.

### III. Elizondo waived his right to complain about the District's giving him a probationary contract by acting inconsistently with an intent to exercise that right.

In the trial court, Elizondo argued that the Commissioner also erred by deciding that Elizondo had waived his right to complain about the type of contract he was offered and signed in 2020; Elizondo referred to this conclusion as a "red herring." La Villa App. at 291-292. But the Commissioner's waiver decision was based on Elizondo's performance under the probationary contract for a year and his acceptance of the salary and benefits accruing to him under the contract. These facts are undisputed. The Commissioner's waiver decision was sound, and Elizondo's arguments to the contrary lack merit.

"A party contractually waives its constitutional or statutory rights by intelligently, voluntarily, and knowingly relinquishing a known right or acting inconsistent with [an intention to] claim[ ] that right." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 844 (Tex. 2000). Parties are free to contract out of statutory default rules and contractually waive constitutional rights. *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 112 (Tex. 2010).

It is undisputed that on April 22, 2020, Elizondo signed a contract "expressly titled 'Second Year Probationary Contract.'" La Villa App. at 38-41; 112–115; and 263

23

(Finding of Fact 2). That probationary contract's termination provision allowed La Villa ISD to terminate Elizondo at the end of this second probationary period if his termination served La Villa ISD's best interest. La Villa App. 40, ¶ 9. It is also undisputed that more than a year passed between the date on which Elizondo signed the second probationary contract and the date on which he was notified of his termination. La Villa App. at 42. Furthermore, Elizondo does not dispute that he performed under this second probationary contract for the entire school year and accepted his salary and other benefits while doing so. There is no evidence in the record that he either failed to perform or that he refused to accept his salary or benefits.

Elizondo argued to the trial court that, under *In re Prudential Insurance Company of America,* 148 S.W.3d 124, 132 (Tex. 2004), his performance of the contract and acceptance of his benefits do not amount to a waiver that is "voluntary, knowing, and intelligent, with full awareness of the legal consequences." La Villa App. at 291-292. In particular, he claimed to have had no "inkling" that his was a probationary contract until he received his termination notice and that no one asked him to sign anything in which he agreed to waive his right to a term contract. *Id.* But *Prudential* does not stand for the proposition that the signatories to a contract are shielded from their willful ignorance of a contract's terms if they fail to read the contract before signing it. Indeed, the *Prudential* court specifically held that the parties fighting application of a contractual waiver of the constitutional right to a jury trial were "charged with knowledge of all of

24

the lease provisions absent some claim that they were tricked into agreement to them, which they do not assert." 148 S.W.3d at 134. Elizondo also does not – and could not – argue that he was tricked into signing the probationary contract. Therefore, he is charged with knowledge that it was a probationary contract and of its termination provision.

Elizondo willingly signed the "Second-Year Probationary Contract." Because he has neither argued nor proven that any exception to the general rule applies, he is deemed to have known and understood the contract, including its legal consequences with respect to termination. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms.").

Elizondo's performance under the Second-Year Probationary Contract and his acceptance of its benefits was inconsistent with any intention to insist that he was entitled to a term contract. *See Wittman*, 100 S.W.3d at 360 ("By accepting the terms of the probationary contract until notified of the School District's intention not to renew that contract, Wittman acted inconsistently with claiming an existing right to a continuing contract."). Thus, the Commissioner correctly determined that Elizondo waived his right to challenge the terms of his probationary contract.

## CONCLUSION AND PRAYER

For all of the foregoing reasons, the Commissioner respectfully requests that this honorable Court reverse the trial court's judgment and, instead, render judgment affirming the Commissioner's decision dismissing and denying Elizondo's appeal for untimeliness and waiver. The Commissioner further requests that this Court render a judgment dismissing Elizondo's UDJA claim and request for attorney's fees for lack of jurisdiction. The Commissioner also requests that the Court grant him such other and further relief, at law or in equity, to which he may be entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

ERNEST C. GARCIA
Chief, Administrative Law Division

*/s/Karen L. Watkins*
KAREN L. WATKINS
Assistant Attorney General
State Bar No. 20927425

OFFICE OF THE ATTORNEY GENERAL

26

Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone:   (512) 475-4208
Facsimile:    (512) 320-0167
karen.watkins@oag.texas.gov
*Counsel for Appellant Mike Morath,*
*Texas Commissioner of Education*

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 4,238 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Karen L. Watkins*
KAREN L. WATKINS
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Appellant Morath's Brief* has been served on the following Appellee by e-service and email on this 17th day of April 2025:

RUBEN R. PEÑA
State Bar No. 15740900
LAW OFFICES OF RUBEN R. PEÑA, P.C.
222 W. Harrison, Suite B
Harlingen, Texas 78550
Tel.:   (956) 496-2060
ruben@rubenpenalaw.com

COUNSEL FOR APPELLEE,
DR. PAZ ELIZONDO

JOHAN HOLTER
State Bar No. 24106107
KRISTI GODDEN
State Bar No. 24079577
DAVID CAMPBELL
State Bar No. 24057033
EDEN RAMIREZ
State Bar No. 24112355
O'HANLON, DEMERATH & CASTILLO
808 West Avenue
Austin, Texas 78701
Tel.:   (512) 494-9949
Fax:    (512) 494-9919
jholter@808west.com
kgodden@808west.com
dcampbell@808west.com
eramirez@808west.com
COUNSEL FOR APPELLANT LA VILLA
INDEPENDENT SCHOOL DISTRICT

/s/ *Karen L. Watkins*
KAREN L. WATKINS
Assistant Attorney General

28

# APPENDICES

Appendix A – Second Amended Final Judgment

Appendix B – The Commissioner's Decision

# APPENDIX
# TAB A

**CAUSE NO. D-1-GN-22-002025**

| | | |
|---|---|---|
| DR. PAZ ELIZONDO<br>*Plaintiff* | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§<br>§ | |
| MIKE MORATH, TEXAS<br>COMMISSIONER OF EDUCATION &<br>LA VILLA INDEPENDENT SCHOOL<br>DISTRICT<br>*Defendants* | §<br>§<br>§<br>§<br>§ | 455th JUDICIAL DISTRICT<br><br><br>TRAVIS COUNTY, TEXAS |

---

### SECOND AMENDED FINAL JUDGMENT

---

On November 18, 2022, the Court heard and considered the above-styled and numbered cause. The parties appeared through their attorneys of record. After considering the administrative record, the briefing, the relevant law, and the oral argument, the Court renders judgment as follows:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the February 22, 2022 Decision of the Commissioner in Docket No. 049-R10-07-2021 is hereby REVERSED.

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendants' pleas to the jurisdiction are GRANTED as to Plaintiff's additional claim under the Texas Declaratory Judgment Act.

**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that Plaintiff's claim under the Texas Declaratory Judgment Act is dismissed.

This is a final and appealable judgment. All relief not granted herein is DENIED.

SIGNED _February 12, 2025_

PRESIDING JUDGE
MAYA GUERRA GAMBLE

# APPENDIX
# TAB B

| | | |
|---|---|---|
| DR. PAZ ELIZONDO, | § | BEFORE THE |
| Petitioner, | § | |
| | § | |
| v. | § | COMMISSIONER OF EDUCATION |
| | § | |
| LA VILLA INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| Respondent. | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

Petitioner Dr. Paz Elizondo complains that Respondent La Villa Independent School District denied as untimely his grievance over the termination of his probationary contract. Adrienne Butcher is the Administrative Law Judge appointed to hear this case. Petitioner is represented by Ruben Peña, Attorney at Law, Harlingen, Texas. Respondent is represented by Eden Ramirez and Kristi Godden, Attorneys at Law, Austin, Texas.

The primary issue in this case is whether Petitioner timely filed his grievance with Respondent under Respondent's local grievance policy, Policy DGBA (Local). The parties submitted their respective briefs on this issue. Petitioner argues that the timeline to file a grievance began when Respondent notified him of the termination of his probationary contract. Respondent argues that the timeline began when Petitioner and Respondent executed the second probationary contract about which Petitioner complains. Respondent is correct.

Because the local record contains substantial evidence that Respondent's board of trustees did not err in denying Petitioner's grievance as untimely, and because Petitioner waived his right to complain about the type of contract that Respondent issued him when he executed and then performed under that contract, accepting its benefits for a year before complaining about it, Petitioner's appeal is denied.[1]

---

[1] Petitioner filed exceptions to the Administrative Law Judge's Proposal for Decision, which were considered.

049-R10-07-2021

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are established by the record and file in this case in accordance with 19 Tex. Admin. Code § 157.1072(i):

1. Petitioner had a probationary administrator contract with Respondent during the 2019–2020 school year, which preceded the probationary contract at issue in this appeal.

2. On or about April 22, 2020, Petitioner signed a second probationary contract for the 2020–2021 school year. The contract is entitled, "Second Year Probationary Contract."

3. Petitioner worked for Respondent during the 2020–2021 school year under the second probationary contract. On April 26, 2021, Respondent notified Petitioner by hand-delivered letter that in an April 17, 2021 board meeting, the board voted to terminate Petitioner's probationary contract at the end of its term.

4. Respondent has a local employee grievance policy, Policy DGBA (Local). The policy provides, in relevant part, that an employee's complaint form must be filed "[w]ithin 15 days of the date the employee first knew, or with reasonable diligence should have known, of the decision or action giving rise to the complaint or grievance."

5. On April 29, 2021, Petitioner filed a grievance under Respondent's Policy DGBA (Local). The grievance complained about "[Respondent's] administration providing [Petitioner] a probationary contract by mistake instead of a term contract for the 2020–2021 school year." Respondent's administration dismissed the lower-level grievance as untimely. On June 9, 2021, Respondent's board of trustees denied the Level 3 grievance appeal.

6. Petitioner timely filed a petition for review with the Commissioner. The parties filed briefs on the issue of Petitioner's grievance's timeliness. Petitioner did not appear for the December 8, 2021 scheduled telephone hearing on the briefs before the Administrative Law Judge. Therefore, this case is decided on submission of the parties' briefs.



049-R10-07-2021

2

**ELIZONDO V. LA VILLA ISD 000234**

Probationary and term contracts

The Texas Education Code distinguishes probationary and term contracts. Probationary contracts carry far fewer rights and procedural protections than term contracts, particularly with respect to termination rights. *Compare* Tex. Educ. Code § 21.203 (probationary contract termination procedures) *with* Tex. Educ. Code § 21.206–.209. School boards can terminate a probationary contract upon finding that termination is in the school district's best interest and need only notify the teacher of the termination. A board's probationary contract termination decision is not appealable. Tex. Educ. Code § 21.103(a). Thus, a probationary teacher is generally limited to challenging the sufficiency of the termination notice. *See id.* By contrast, term contracts carry far greater procedural protections for teacher nonrenewal, including the right to a hearing by the board or an independent hearing examiner and the right to appeal the school board's final decision to the Commissioner. *See* Tex. Educ. Code §§ 21.206–.206, .301. Because of the statutory distinction between the two contract types, school districts approach end-of-contract issues differently. A probationary contract holder is, as the contract name indicates, essentially on probation.

Petitioner's grievance deadline under Policy DGBA (Local)

The issue before the Commissioner is limited to the timeliness of Petitioner's grievance with Respondent under Policy DGBA (Local). Policy DGBA (Local) provides, in relevant part, that employee complaint forms must be filed "[w]ithin 15 days of the date the employee first knew, or with reasonable diligence should have known, of the decision or action giving rise to the complaint or grievance." Texas law recognizes that school boards are the ultimate authorities on interpreting their policies. *See Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000).

Petitioner signed his second probationary contract, expressly titled, "Second Year Probationary Contract," on April 22, 2020. Yet, he did not file his employee grievance complaining that Respondent issued him the wrong contract type until April 29, 2021, after the

049-R10-07-2021
3

board gave him its termination notice. The board denied his grievance as untimely under its fifteen-day policy deadline. The record supports the board's finding that Petitioner knew or should have known that he had a probationary contract when he signed a contract plainly reflecting that in its title. *See Simani v. Houston Indep. Sch. Dist.*, 2019 LEXIS 16, *13 (Comm'r Educ. 2019).

Petitioner argues that under *Davis v. Morath*, No. 19-015 (Tex. 2021), the deadline for Petitioner to file his grievance began when the board issued his termination letter. However, *Davis* involved the adoption of a district-wide school appraisal system that applied to all teachers, not to an individual teacher's employment contract. The *Davis* Court held that the teachers did not know until their scorecards issued under the appraisal system how the policy would impact them individually. In this case, the contract was not a general school policy applicable to all teachers but a specific legal document impacting only Petitioner as a teacher. Aside from its title, the contract expressly provided for probationary contract termination, lacking any term contract procedural protections. Petitioner's alleged harm accrued on the day that he signed the probationary contract containing these terms, not on the day Respondent notified him of his termination in conformance with those terms. Petitioner's argument is unpersuasive.

Waiver of right to complain about contract

In addition to failing to timely file a grievance under Respondent's Policy DGBA (Local), Petitioner waived his right to complain about the type of contract that Respondent issued him when he performed under that contract for a year and accepted its salary and benefits. The Commissioner has previously held that a party waives the right to complain about a school district issuing the wrong type of contract if the party has acted inconsistently with its rights by accepting a contract's benefits. *See Simani*, 2019 LEXIS 16, at *13–14; *see also Wittman v. Nelson*, 100 S.W.3d 356, 360 (Tex. App.—San Antonio 2002, pet. denied). Petitioner waived his right to complain about the fact that Respondent issued him a probationary contract in April

265    **ELIZONDO V. LA VILLA ISD 000236**

2020 by signing it at that time and then performing under it for a year before complaining that it was the wrong type of contract.

## CONCLUSIONS OF LAW

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1. Texas law requires school districts to adopt grievance procedures. Respondent adopted Policy DGBA (Local) as a grievance policy for employees, in compliance with Texas law. Tex. Educ. Code § 11.1511(b)(13).

2. Petitioner did not timely file his grievance regarding the type of contract that Respondent issued him in April 2020. The timeline for Petitioner to file a grievance under the policy began when he was issued a probationary contract, not a year later in April 2021, when Respondent notified Petitioner that it was terminating his contract.

3. Respondent did not err in denying Petitioner's grievance as untimely under its Policy DGBA (Local). The local record contains substantial evidence to support Respondent's finding that Petitioner knew or should have known, with reasonable diligence, that he had a probationary contract when he executed a contract bearing that title and setting out probationary contract terms on April 22, 2020.

4. A party can contractually waive his statutory or constitutional rights by knowingly and voluntarily acting inconsistently with those rights. Petitioner signed his probationary contract with Respondent and then accepted the salary and benefits under that contract for several months until he received his termination letter. Petitioner waived his right to challenge the terms of his probationary contract.

5. Petitioner's appeal should be denied.



049 R 10-07-2021

5

**ELIZONDO V. LA VILLA ISD 000237**

ORDER

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby ORDERED that the Petitioner's appeal be, and is hereby, DISMISSED.

SIGNED AND ISSUED this  22nd  day of February 2022.

**Mike Morath**

Digitally signed by Mike Morath
Date: 2022.02.22 11:45:34 -06'00'

MIKE MORATH
COMMISSIONER OF EDUCATION



**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jeff Lutz on behalf of Karen Watkins
Bar No. 20927425
jeff.lutz@oag.texas.gov
Envelope ID: 99805124
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 2025 0417 Appellant Morath Brief
Status as of 4/17/2025 3:09 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ruben Pena | 15740900 | ruben@rubenpenalaw.com | 4/17/2025 2:08:32 PM | SENT |
| Jeff Lutz | | jeff.lutz@oag.texas.gov | 4/17/2025 2:08:32 PM | SENT |
| Karen Watkins | | karen.watkins@oag.texas.gov | 4/17/2025 2:08:32 PM | SENT |
| Kristy Alonzo | | kalonzo@thompsonhorton.com | 4/17/2025 2:08:32 PM | SENT |
| David J.Campbell | | dcampbell@thompsonhorton.com | 4/17/2025 2:08:32 PM | SENT |
| Kate French | | kfrench@thompsonhorton.com | 4/17/2025 2:08:32 PM | SENT |